**Yonis H. NUR, Plaintiff,**

v.

**K.F.C., USA, INC. and K.F.C., National Management Company, Defendants.**

**No. CIV.A. 00–00673 HHK.**

United States District Court, District of Columbia.

March 21, 2001.

---

C. Michael Tarone, Washington, DC, for Plaintiff.

Patrick Liam Clancy, Venable, Baetjer & Howard, Rockville, MD, Eric J. Pelton, Birmingham, MI, for Defendants.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff Yonis Nur ("Nur"), a native Somalian and practicing Muslim, was formerly employed as an Assistant Restaurant Manager with defendants K.F.C. USA Inc. and K.F.C. National Management Company (collectively, "KFC"). In this suit, Nur alleges that KFC discriminated against him on the basis of his gender, religion, race, and ethnicity in violation of the District of Columbia Human Rights Act ("DCHRA"). Nur also claims various Fair Labor Standards Act ("FLSA") violations, wrongful termination, and defamation. Before the court is KFC's motion to dismiss for lack of jurisdiction. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that KFC's motion to dismiss should be granted.

**I.**

Nur began working for KFC on September 9, 1997. For the first eight weeks of his employment, he worked as an Assistant Unit Manager Trainee at a KFC restaurant located in Capitol Heights, MD. From June, 1998 to June 7, 1999, Nur worked as an Assistant Unit Manager at a KFC restaurant located in Washington, D.C. Nur claims that during these periods of employment KFC did not pay him any overtime for the hours he worked in excess of 40 hours per week. Nur also claims that his supervisor, KFC Market Manager Clinton Polk, falsely accused Nur of reducing the hours of KFC hourly employees who worked under Nur's supervision. Polk later told Nur that unless he sign a written admission of wrongdoing, he would be fired. Nur refused to sign the admis-

sion, and he was subsequently terminated. This suit followed.

KFC argues that Nur signed two binding agreements to arbitrate any claims that arose between himself and KFC. The first agreement, entitled "Arbitration of Employee Rights," was included on Nur's employment application form; the second agreement, entitled "Agreement to Arbitrate," was provided as part of Nur's receipt of the KFC Restaurant Management Handbook. *See* Defs.' Mot. to Dismiss for Lack of Jurisdiction at 2 ("Defs.' Mot. to Dismiss"). These arbitration agreements, attached as Exhibits A and B to KFC's motion, both state:

> Because of the delay and expense of the court systems, KFC and I agree to use confidential binding arbitration for any claims that arise between me and KFC, its related companies, and/or their current or former employees. Such claims would include any concerning compensation, employment (including, but not limited to any claims concerning sexual harassment), or termination of employment. Before arbitration, I agree: (i) first, to present any such claims in full written detail to KFC; (ii) next, to complete any KFC internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) will apply.
>
> Defs.' Mot. to Dismiss at Ex. A, Ex. B (slight additions).

KFC contends that these agreements, which Nur purportedly signed as a condition of his employment, are enforceable and preclude Nur's claims before this court. Nur responds that at the time the Complaint was filed he did not know that he had signed an arbitration agreement and that KFC did nothing to inform him about "the implications of arbitration v. judicial relief." Opp'n to Defs.' Mot. to Dismiss at 1, 4 ("Pl.'s Opp'n").

## II.

█ The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal courts have recognized a strong policy favoring alternative means of dispute resolution and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Following this mandate, the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that employment discrimination claims filed pursuant to the Age Discrimination in Employment Act were subject to a binding arbitration agreement signed by the plaintiff-employee. The *Gilmer* court noted that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). *See also Cole v. Burns Intern. Sec. Services*, 105 F.3d 1465, 1482–83 (D.C.Cir.1997) (relying on *Gilmer* to enforce an arbitration agreement in a Title VII suit).

█ Before ruling on KFC's motion to dismiss, the court must first determine

whether Nur and KFC entered into a binding arbitration agreement. *See AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Nur does not dispute that he signed the arbitration agreements, but maintains that he did not know "the implications of his opting for arbitration" and that KFC did nothing to encourage him to "think the matter through before signing." Pl.'s Opp'n at 3. Nur's arguments are without merit. First, under basic contract law, "[o]ne who signs a contract which he had an *opportunity* to read and understand is bound by its provisions." *Paterson v. Reeves,* 304 F.2d 950, 951 (D.C.Cir.1962) (emphasis added). That Nur may not have comprehended the implications of his decision is irrelevant as to whether the agreement is valid. Second, Nur cites no case law, and the court is aware of none, that requires employers to "go out of [their] way ... to recommend to the employee that he or she think the matter through before signing" an arbitration agreement. Pl.'s Opp'n at 3. Indeed, it is Nur's responsibility to "think the matter through" before he signs any contract. *Id.* Nur has presented no support for the notion that employers somehow have an affirmative duty to make sure their employees 'think' before signing employment agreements. *Id.* In the absence of some special circumstances such as duress, fraud, or coercion—which Nur does not allege here—the court finds that the arbitration agreements Nur signed are valid and enforceable. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Paterson,* 304 F.2d at 951.

■ Next, the court must determine whether the arbitration agreements encompass the claims Nur raises in his Complaint. *See AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Here the agreements cover "any claims that arise between [plaintiff] and KFC ... includ[ing] any concerning compensation, employment ..., or termination of employment." Defs.' Mot. to Dismiss at Ex. A, Ex. B (slight additions). All of Nur's claims in this suit—wrongful discharge, defamation, DCHRA discrimination, and FLSA violations—arise out of or relate to Nur's employment with KFC and, therefore, fall within the scope of the binding arbitration agreements. Other courts addressing whether such causes of action may be arbitrated have also ruled in favor of arbitration. *See Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 832–33 (D.C.Cir. 1987) (enforcing arbitration agreement over claims of defamation); *Benefits Communication Corp. v. Klieforth,* 642 A.2d 1299, 1304 (D.C.1994) (DCHRA); *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319–20 (9th Cir.1996) (FLSA); *McGinnis v. E.F. Hutton and Co., Inc.,* 812 F.2d 1011, 1015 (6th Cir.1987) (wrongful discharge).

■ Still, Nur argues that the arbitration agreements here are invalid because they are written in fine print and represent contracts of adhesion. These arguments are also without merit. First, contrary to Nur's suggestion, the arbitration agreement found in the KFC employment application is actually written in bold text and appears slightly *larger* than the text of the other sections. The second arbitration agreement is written in a normal-sized font, not fine print. *See* Defs.' Mot. to Dismiss at Ex. A, Ex. B. Second, as KFC rightly indicates, Nur presents no arguments as to how these arbitration agreements are unconscionable contracts of adhesion. The agreements do not favor one party over the other, they are not unduly burdensome, and they provide that the applicable rules of the American Arbitration Association and the Federal Arbi-

tration Act apply to all proceedings. Other courts evaluating similar arbitration agreements have also found them not to be contracts of adhesion. *See Cole v. Burns Intern. Sec. Services,* 105 F.3d 1465, 1482–83 (D.C.Cir.1997); *Benefits Communication Corp. v. Klieforth,* 642 A.2d 1299, 1304 (D.C.1994).

■ Finally, Nur contends that the arbitration agreements are invalid because they do not indicate who shall pay the costs of arbitration. This issue is moot given that KFC states in its most recent pleading that "it will pay for the costs of arbitration." Defs.'s Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss at 6.

### III.

For the foregoing reasons, the court concludes that the arbitration agreements in this case are valid and that Nur must present his claims to arbitration.[1] Consequently, KFC's motion to dismiss for lack of jurisdiction is granted. An appropriate order accompanies this memorandum opinion.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 21st day of March, 2001, hereby

**ORDERED** and **ADJUDGED** that the complaint in this case is **DISMISSED.**

---

**1.** This court's decision is further bolstered by the recent Supreme Court opinion in *Circuit City Stores, Inc. v. Adams,* 532 U.S. ——, —— ——, slip op. at 3–16, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), which upheld a provision in the employer's employment application that required all employment disputes to be resolved through arbitration. The court found that the arbitration agreement was valid under the Federal Arbitration Act.