**Melena NELSON, Plaintiff,**

v.

**INSIGNIA/ESG, INC., Defendant.**

**Civil Action No. 01–01311(RBW).**

United States District Court, District of Columbia.

Aug. 12, 2002.

Shelley Lynn Madden, Washington, DC, for plaintiff.

Monique Yvette Fortenberry, Michael N. Petkovich, Jackson, Lewis LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon defendant's Motion to Dismiss and/or for Summary Judgment ("Def.'s Mot."), the plaintiff's Opposition to Defendant's Motion to Dismiss and/or for Summary Judgment ("Pl.'s Opp'n"), and Defendant's

Reply ("Def.'s Reply") thereto. The basis for defendant's motion is the assertion that the plaintiff failed to submit her claims contained in the complaint ("Compl.") to the pre-designated arbitrator, pursuant to the arbitration clause in her employment agreement with the defendant. Having concluded that the plaintiff has failed to submit even a scintilla of evidence to demonstrate a special circumstance that would invalidate the parties' employment agreement, the Court has undertaken an independent examination of the arbitration agreement to determine whether there exists any basis to invalidate the agreement. Finding none, the Court must grant summary judgment and direct the plaintiff to submit her claims to the designated arbitrator pursuant to the arbitration provision contained in the employment agreement that she executed with the defendant.

## I. *Factual Background*

A brief recitation of the facts of this case is a necessary prelude to the Court's analysis of the legal challenges raised in the parties' pleadings. The events that preceded the filing of this action commenced when the defendant hired the plaintiff as an Assistant Controller for its office located in the District of Columbia. Compl. ¶ 4; Def.'s Mot. Ex. 1. The employment contract was executed on July 22, 2000, and the two and a half page written agreement contained the following arbitration clause:

**ARBITRATION**

Any dispute arising out of or relating to this Agreement, your performance or the Company's performance thereunder, the terms and conditions of your employment by the Company, and/or the termination of such employment which has not been resolved by non-binding mediation under the auspices of J–A–M–S/Endispute within 90 days of being submitted to the Company in writing shall be resolved by binding arbitration in New York, New York (or such other location as may be mutually agreed upon) through the offices of, and in accordance with the arbitration rules of, J–A–M–S/Endispute applicable to employment arbitration (the "Rules") as then in effect. Other than with respect to provisional equitable relief sought at the outset of the dispute, neither party shall be entitled to commence or maintain any action in a court of law with respect to any matter in dispute or relief requested until such matter or request for relief shall have been submitted to and decided by the chosen arbitrator and then only for the enforcement of the award of such arbitrator. The decision of the arbitrator shall be final and binding upon the parties and all persons claiming under and through them. All fees and expenses of the arbitrator shall be borne equally by the Company and Employee.

Def.'s Mot. Ex. 1. The plaintiff's employment ended when she was terminated by the defendant.[1] Compl. ¶ 12.

The plaintiff alleges that prior to her termination she had complained to the defendant's "upper management" regarding race and gender discrimination by her immediate supervisor and that she was subsequently promised an increased annual performance bonus for working under "intolerable conditions." Compl. ¶¶ 6–7. After her termination, the plaintiff did not receive the increased bonus and proceeded to file a civil complaint in the Superior Court of the District of Columbia alleging: (1) intentional racial discrimination in violation of 1 D.C.Code § 2512 (2001); (2) intentional sexual discrimination in violation of 1 D.C.Code § 2512 (2001); (3) retaliatory discharge in violation of 1 D.C.Code § 2525 (2001); and (4) breach of implied contract. Compl. ¶¶ 15–21.

---

1. Neither party provided the date when the plaintiff's employment was terminated.

The defendant contends that the plaintiff's claims arise out of her employment, are therefore subject to mandatory arbitration, and accordingly cannot be pursued in this Court. Def.'s Mot. at 2. The plaintiff counters, arguing that the arbitration agreement is invalid because "it is unclear" whether she understood the full scope of the agreement. Pl.'s Opp'n at 2. The plaintiff also asserts that "should Plaintiff be able to show that she was under duress to agree to binding arbitration, this would negate the contract agreement with Defendant." *Id.*

## II. *Jurisdiction*

On the defendant's motion, the case was removed to this Court pursuant to this Court's original jurisdiction created by 28 U.S.C. § 1332 (2000) (diversity of citizenship).[2] Notice of Removal of a Civil Action ("Removal Notice") ¶ 5. In its removal notice, the defendant asserted, without challenge, that the plaintiff is domiciled in Maryland, and that the defendant is incorporated in Delaware, with its principal place of business in New York. The defendant's assertion that the amount in controversy exceeds the statutory minimum of $75,000 that is required for this Court to exercise diversity jurisdiction is also undisputed. Removal Notice ¶ 5. Therefore, this Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

■ Despite the fact that this Court has subject-matter jurisdiction pursuant to diversity, the defendant asserts that under the circumstances of this case, where the parties have entered into a binding arbitration agreement, the Court lacks subject-matter jurisdiction as a result of the Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. §§ 1–16 (2000), and requests that this action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). The FAA requires that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, the FAA states that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* Therefore, this Court finds that the FAA statutory scheme for assessing whether parties must submit their claims to arbitration necessarily confers jurisdiction on the Court to determine the enforceability of the agreement when "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue . . ." *Id.* In this case, the plaintiff has placed the arbitration agreement in issue for this Court's determination and, thus, rather than divesting the Court of jurisdiction, the filing of this action actually conferred to the Court the obligation, pursuant to the FAA, to determine the enforceability of the agreement and decide whether arbitration should be compelled. Dismissal under Rule 12(b)(1) is therefore inappropriate.

## III. *Standard of Review*

■ Having concluded that this matter is not subject to dismissal under Rule 12(b)(1), the Court must consider whether

---

**2.** 28 U.S.C. § 1332(a)(1) states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—citizens of different States." This jurisdictional statute also provides that for its purposes "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . ." 28 U.S.C. § 1332(c).

the defendant is entitled to have its motion for summary judgment entertained by the Court. As part of its examination into whether the arbitration agreement is enforceable, the Court, in addition to considering the plaintiff's allegations on the subject, has also conducted its own independent inquiry of the enforceability of the fee-splitting provision contained in the arbitration agreement. This inquiry has required the Court to evaluate whether the party seeking to avoid arbitration (the plaintiff) has adequately demonstrated that the arbitration fees will effectively prohibit her from vindicating her claims against the party seeking arbitration (the defendant). *See Green Tree Fin. Corp.– Alabama v. Randolph,* 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). This analysis necessarily required the Court to look outside the four corners of the complaint, namely, the review of the arbitration agreement itself and the fee-splitting provision of the agreement, which is attached as an exhibit to the defendant's Motion to Dismiss and/or for Summary Judgment, and a letter from defendant's counsel to plaintiff's counsel provisionally offering to pay for the arbitration expenses, which is attached as an exhibit to the defendant's Reply.[3] As

more thoroughly discussed below, the Supreme Court in *Green Tree* announced a burden-shifting test designed to elicit whether arbitration fees assessed to a party seeking to avoid arbitration will be prohibitive of that party's ability to seek vindication of her claims in an arbitral forum. *Id.* Circuit Courts that have considered *Green Tree's* burden-shifting test have chosen to conduct summary judgment analyses because the very nature of the *Green Tree* test will usually require reviewing courts to look beyond the complaint and conduct an independent fact-finding determination of whether prohibitive expenses will preclude a party from pursuing arbitration. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 607–09 (3d Cir.2002) (defendant filed a motion to dismiss, or in the alternative for summary judgment and court granted summary judgment); *Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir.2001) (court granted defendant's summary judgment motion). Consistent with how other courts have resolved disputes of this nature, this Court concludes that summary judgment is the proper procedural mechanism to use in evaluating whether the plaintiff must submit her claims to arbitration.[4]

3. While the defendant chose to file a motion to dismiss, or in the alternative for summary judgment, many defendants choose to file a motion to compel arbitration pursuant to 9 U.S.C. §§ 1–16 (2000). *See, e.g., Green Tree,* 531 U.S. 79, 121 S.Ct. 513; *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) This distinction, however, is immaterial for the purposes of this Court's standard of review analysis. *See Goodman v. ESPE Am., Inc.,* No. 00–CV–862, 2001 WL 64749, at *1 (E.D.Pa. Jan.19, 2001) ("A motion to compel arbitration is treated like a summary judgment motion.").

4. While the Court finds it appropriate to review this matter as a motion for summary

judgment, rather than as a motion to dismiss for lack of subject-matter jurisdiction, because of the nature of the *Green Tree* burden-shifting test, an analysis under Rule 12(b)(1) would be identical because matters outside of the pleadings were considered. The District of Columbia Circuit has stated that a

District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) on the complaint standing alone. But where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992) (citations omitted).

Summary Judgment is generally appropriate when the pleadings "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail under Rule 56, the moving party for summary judgment must show that the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *Greene v. Amritsar Auto Servs. Co.,* 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999). Thus, "[i]f the evidence is merely colorable, (citation omitted), or is not significantly probative, (citation omitted), summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### IV. *Analysis*

### (A) *Federal Arbitration Act*

The FAA was originally enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *see EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270–71, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "[W]hen Congress passed the Arbitration Act in 1925, it was 'motivated, first and foremost, by a ... desire' to change this antiarbitration rule." *Allied–Bruce,* 513 U.S. at 270–71, 115 S.Ct. 834 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Those courts that have examined arbitration agreements recognize that individuals who agree to arbitrate their claims do not forgo their "substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial,

In *Herbert,* the Circuit Court discussed its holding in *In re Swine Flu Immunization Prod. Liability Lit.,* 880 F.2d 1439 (D.C.Cir. 1989), where the Court had addressed the standard of review to be used when deciding a Rule 12(b)(1) and matters outside of the pleadings are considered. *Id.* at 198 n. 6. The Court in *Swine Flu* stated "that where a judgment is entered pursuant to Rule 12(b)(1) and, like a summary judgment, is based in part upon matters outside the pleadings, the proper approach is to look to the standard of Rule 56 ... [and] assess plaintiff's complaint and her submissions ... by asking whether she showed that a reasonable factfinder could rule in her favor." *Id.* at 1443. The Circuit in *Herbert* also noted that, although *Swine Flu* applied to circumstances in which there was an undisputed factual record, there was no reason to preclude a district court from applying the same approach "when a factual dispute regarding jurisdiction ... is presented." *Herbert,* 974 F.2d at 198 n. 6.

forum." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Furthermore, federal courts have recognized a strong public policy favoring arbitration and " '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Nur v. K.F.C., USA, Inc.,* 142 F.Supp.2d 48, 50 (D.D.C.2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). This is because there are real benefits to the enforcement of "[a]rbitration agreements [since they] allow parties to avoid costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City,* 532 U.S. at 123, 121 S.Ct. 1302.

Since its adoption, the Supreme Court has consistently given an expansive interpretation to the scope of the FAA. For example, in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Court held that Congress enacted the FAA pursuant to the Commerce Clause and found that Congress intended for the Act to apply to diversity cases. In *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court held that the FAA not only applies to federal claims, but also to state-law claims in state court and pre-empts all contrary state arbitration statutes. The Court also examined in *Allied–Bruce* and *Circuit City* the FAA's coverage provision, embodied in § 2, which states:

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In *Allied–Bruce,* the Court concluded that the use of the words "involving commerce" in Section 2 of the Act signals an "intent to exercise Congress' commerce power to the full" in the arbitration area. 513 U.S. at 277, 115 S.Ct. 834. Consistent with its position taken in *Allied–Bruce,* the Supreme Court recently held that the FAA applies to all employment contracts, except to those contracts of transportation workers. *Circuit City,* 532 U.S. at 111–19, 121 S.Ct. 1302. Finally, federal courts have "appl[ied] ordinary state-law principles that govern the formation of contracts", *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), when determining the validity of an arbitration agreement because Section 2 of the FAA provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Doctor's Assoc., Inc., v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (The FAA does not preclude parties from raising state contract defenses, such as fraud, duress, and unconscionability, as grounds for invalidating an arbitration agreement). Therefore, because the plaintiff's claims arise from her employment as a non-transportation worker, and because her employment contract contained an arbitration clause, this Court must analyze the arbitration agreement under the FAA and applicable state law to determine whether (1) the parties entered into a valid and enforceable arbitration agreement and, if they did, (2) does the arbitration agree-

ment encompass the claims raised in the complaint? *Nur,* 142 F.Supp.2d at 50–51.

### (1) *Is the Arbitration Agreement Enforceable?*

The foundation for this Court's analysis of whether the arbitration agreement in this case is enforceable is grounded in the requirement under the FAA that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree,* 531 U.S. at 91, 121 S.Ct. 513 (citing *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647).[5] In the plaintiff's two page Opposition to Defendant's Motion to Dismiss and/or for Summary Judgment, the plaintiff does not dispute that she signed the employment contract that contained the arbitration agreement, but seemingly asserts that she did not understand the agreement and/or signed the agreement under duress. Pl.'s Opp'n at 1–2. However, as more fully set forth below, because the plaintiff has failed to adequately proffer any substantive evidence that her claims "are unsuitable for arbitration," this Court must grant summary judgment so that the plaintiff may arbitrate her claims.

### (a) *Choice of Law*

■ The Court, in determining whether the arbitration agreement is a valid contract, must "apply ordinary state law principles that govern the formation of contracts." *Emeronye v. CACI Int'l,* 141 F.Supp.2d 82, 86 (D.D.C.2001) (quoting *First Options,* 514 U.S. at 944, 115 S.Ct. 1920). Although the parties have failed to adequately address the choice of law question for the Court's analysis of whether the arbitration agreement is enforceable, the Court nevertheless concludes that District of Columbia law controls because both the

formation and the performance of the contract occurred in this jurisdiction.

The District of Columbia Circuit, in *Ideal Electronic Security Co. v. International Fidelity Insurance Co.,* 129 F.3d 143 (D.C.Cir.1997), stated that "[w]hen deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *Id.* at 148 (citing *Lee v. Flintkote Co.,* 593 F.2d 1275, 1278–79 n. 14 (D.C.Cir.1979)); *see Shenandoah Assocs. Ltd. P'ship v. Tirana,* 182 F.Supp.2d 14, 18 (D.D.C.2001) (in a diversity action a court "is obligated under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the choice of law rules prevailing in [the forum] jurisdiction."). The District of Columbia Circuit held that when a contract is silent as to "which law governs their agreement, the Restatement approach requires the court to weigh various jurisdictions' contacts with the transaction at issue and to determine which has the most substantial interest in the matter." *Ideal Elec.,* 129 F.3d at 148 (citing Restatement (Second) of Conflict of Laws § 188). Restatement (Second) § 188 states that in the absence of an "effective choice of law by the parties ... the contacts to be taken into account" include:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Because the parties here failed to designate which jurisdiction's law they desired to govern their agreement, this Court will

---

**5.** Although the facts of *Green Tree* did not involve an employment dispute, but rather allegations involving violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*

(2000), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f (2000), the Supreme Court's general discussion about arbitration agreements is instructive.

apply District of Columbia law because it is both the location where the contract was executed and performed, and the other Restatement factors do not favor applying the law of another forum.

#### (b) *Plaintiff's Understanding of the Employment Agreement*

■ Although the plaintiff simply asserts that "[i]t is not clear that [she] was even aware that, by signing this offer of employment letter, she signed away her rights to pursue any claims she might have in the judicial system" and seems to suggest that the defendant had an affirmative duty to discuss and explain the arbitration clause to her, Pl.'s Opp'n at 2, the Court must reject the plaintiff's position because District of Columbia law dictates that a signature on an agreement indicates " 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Emeronye*, 141 F.Supp.2d at 86 (citing *Cole v. Burns Int'l Sec. Servs.*, 1996 U.S. Dist. Lexis 22541, at *5 (D.D.C. Jan. 31, 1996) ("A party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation."), *aff'd*, 105 F.3d 1465 (D.C.Cir.1997); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C.1995) ("Mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement . . .")). The court in *Nur* rejected a position similar to the plaintiff's, stating that " '[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions.' That [the plaintiff] may not have comprehended the implications of his decision is irrelevant as to whether the agreement is valid." 142 F.Supp.2d at 51 (quoting *Paterson v. Reeves*, 304 F.2d 950, 951 (D.C.Cir.1962)). Moreover, the *Nur* court addressed and rejected the plaintiff's claim that an employer has an affirmative duty to ensure that its employees understand the implications of signing an arbitration agreement. *Id.* (concluding there is no case law that supports plaintiff's proposition that an employer has an "affirmative duty to make sure their employees 'think' before signing employment agreements."). Therefore, because the plaintiff signed the employment agreement that contained an arbitration clause, the Court must find that the agreement is valid and enforceable, unless the plaintiff is able to show some "special circumstances that would negate her assent to the contract." *Emeronye*, 141 F.Supp.2d at 86; *see Nur*, 142 F.Supp.2d at 51.

#### (c) *Special Circumstances that would Invalidate the Arbitration Agreement*

#### (i) *Duress*

■ The District of Columbia Court of Appeals in *Isaac v. First National Bank of Maryland, D.C.*, 647 A.2d 1159 (D.C. 1994), held that "a party faced with a clear written agreement must allege and prove fraud, duress, or mutual mistake to negate the disputed provision." *Id.* at 1162 (citing *Howard Univ. v. Best*, 484 A.2d 958, 967 (D.C.1984)). The court, relying on Williston on Contracts, found that the party seeking to invalidate an agreement must demonstrate a claim of duress by clear and convincing evidence, which "reflect[s] strictness in interpretation and a high level of proof; otherwise, the parol evidence rule will be swallowed up in the exceptions." *Id.* (citing 13 Williston on Contracts § 1627 at 811 (3d ed.1970)). While plaintiff's counsel asserts that "should Plaintiff be able to show that she was under duress to agree to binding arbitration, this would negate the contract agreement with Defendant," Pl.'s Opp'n at 2, mere speculation is inadequate to satis-

fy plaintiff's affirmative obligation to demonstrate duress by clear and convincing evidence. *Isaac,* 647 A.2d at 1162. Something more is necessary and, in the absence of something more concrete, the claim of duress must be rejected since the plaintiff has failed to show that special circumstances of that nature are operative in this case.

### (ii) *Obligation that Plaintiff Pay Part of the Arbitration Expenses*

■ As this Court discussed above, the Supreme Court has repeatedly "rejected generalized attacks on arbitration agreements that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" *Green Tree,* 531 U.S. at 89–90, 121 S.Ct. 513 (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 481, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). The *Green Tree* Court explained that its precedent "demonstrate[s] that even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Id.* (quoting *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (citations omitted)). Despite the deference courts have given arbitration agreements in light of the purpose underlying the enactment of the FAA—"to reverse the long-standing judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other agreements", *Gilmer,* 500 U.S. at 24, 111 S.Ct. 1647—arbitration agreements have been closely scrutinized when they contain provisions that divide the arbitration costs between the parties. *Green Tree,* 531 U.S. at 89–92, 121 S.Ct. 513. Thus, while neither party has raised whether the arbitration agreement's provision that "[a]ll fees and expenses of the arbitrator shall be borne equally by the Company and Employee," Def.'s Mot. Ex. 1, may be grounds to invalidate the agreement, the Court is obliged to make that inquiry *sua sponte* in light of the scrutiny courts have given such provisions. *See, e.g., Cole,* 105 F.3d 1465.

Although prior to the Supreme Court's decision in *Green Tree* the Federal Circuits were split on the enforceability of certain fee-splitting provisions contained in arbitration agreements, applying either a case-by-case analysis or a per se invalidation rule, today the vast majority of the Circuits employ a case-by-case analysis when examining whether a fee-splitting arbitration agreement is invalid, and focus on the record to determine whether the amount of the arbitration costs could foreclose the employee from pursuing arbitration. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 15–16 (1st Cir.1999) (First Circuit refused to invalidate arbitration agreement even where plaintiff may be charged "tens of thousands of dollars per case" because claimant's argument was too speculative and the court noted that "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court."); *Blair,* 283 F.3d at 605–10 (Third Circuit followed the reasoning of *Green Tree* and applied the burden-shifting test requiring a showing of prohibitive arbitration expenses); *Bradford,* 238 F.3d at 556 (Fourth Circuit agreed with the Fifth Circuit in *Williams, infra,* that the appropriate inquiry is a case-by-case analysis); *Williams v. Cigna Fin. Advisors, Inc.,* 197 F.3d 752, 763–64 (5th Cir.1999) (Fifth Circuit held that crucial inquiry under *Gilmer* involves whether claimant can effectively vindicate federal statutory rights that requires a case-by-case analysis); *Burden v. Check into Cash of Kentucky, LLC,* 267 F.3d 483 (6th Cir.2001) (Sixth Circuit cited *Green Tree* for the proposition that the party resisting arbi-

tration bears the burden of showing prohibitive expenses that requires a case-by-case analysis); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366 (7th Cir. 1999) (Seventh Circuit followed First Circuit's reasoning in *Rosenberg* ); *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 683 (8th Cir.2001) (Eighth Circuit stated that if the plaintiff attempts to argue that the fee-sharing provision in the arbitration agreement was invalid on remand, the district court should consider the plaintiff's arguments in light of *Green Tree* which requires the plaintiff to bear the burden of showing the likelihood of incurring prohibitive expenses); *Shankle v. B–G Maint. Management of Colorado, Inc.,* 163 F.3d 1230, 1234 (10th Cir.1999) (Tenth Circuit found fee-splitting provision unenforceable because plaintiff "could not afford such a fee, and it is unlikely other similarly situated employees could either.") [6]; *Bess v. Check Express,* No. 00–16479, 2002 WL 1337304, at *3 (11th Cir. June 19, 2002) (Eleventh Circuit recognized that its prior adherence to the per se invalidation rule was no longer good law in light of the Supreme Court's reversal of its decision in *Green Tree*) [7]; *but see Cole,* 105 F.3d 1465 (seminal case regarding the per se invalidation rule by the District of Columbia Circuit in the context of federal statutory rights) [8]; *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889 (9th Cir.2002) (on remand from the Supreme Court, the Ninth Circuit held arbitration provision invalid under state law because of fee-splitting provision and because it failed to provide for all types of relief that would be available in a judicial forum). In a well-reasoned opinion that was issued after *Green Tree,* the Fourth Circuit explained in *Bradford* that the

> appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.

238 F.3d at 556. The case-by-case analysis recognizes that fee-splitting arbitration agreements are unenforceable in those circumstances where they have the effect of prohibiting employees from exercising the opportunity to vindicate their rights. On the other hand, consistent with what the Court indicated in *Green Tree,* in those circumstances where parties have the fi-

---

6. Although some courts cite *Shankle* for the proposition that the court created a per se proscription against the validity of fee-splitting arbitration agreements, the Tenth Circuit actually examined the facts and circumstances of the plaintiff's ability to access the arbitral forum and invalidated the agreement because the plaintiff could not afford to pay the fee to avail her claim to arbitration. Therefore, this Court, as the Fourth Circuit concluded in *Bradford,* finds that the Tenth Circuit's decision in *Shankle* supports a case-by-case analysis when evaluating the validity of fee-splitting provisions. *Bradford,* 238 F.3d at 555.

7. *See Randolph v. Green Tree Fin. Corp.–Alabama,* 178 F.3d 1149 (11th Cir.1999), *rev'd in*

part and *aff'd in part,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

8. The Court notes that while the Court in *Cole* indicated that it was adopting the per se rule, the Court nonetheless commented on the plaintiff's individual circumstances, stating that:

> [i]f an employee like Cole is required to pay arbitrators' fees ranging from $500 to $1,000 per day or more, ..., in addition to administrative and attorney's fees, it is unlikely that he will be able to pursue his statutory claims? We think not ... These fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job [as a security guard.] 105 F.3d at 1484.

nancial means to pursue their statutory claims through arbitration, the arbitral forum is an acceptable substitution for litigation and therefore the fee-splitting arbitration provision of the agreement does not invalidate the agreement when the case-by-case analysis is employed.

Those Circuits, including this Court's Circuit, that have found fee-splitting provisions in arbitration agreements to be per se invalid have concluded that such cost obligations deter or prohibit employees from pursuing their statutory rights in an arbitral forum. *Cole*, 105 F.3d 1465; *Circuit City*, 279 F.3d 889. In adopting the per se rule in *Cole*, the District of Columbia Circuit stated that while employees "may be required to assume the cost of filing fees and other administrative expenses ... where arbitration has been imposed by the employer and occurs only at the option of the employer—arbitrators' fees should be borne solely by the employer."[9] *Id.* at 1484–85. The Circuit Court in *Cole* was concerned that the imposition of having to pay arbitrators' fees would have a chilling effect on the ability of employees to vindicate their statutory rights through arbitration, emphasizing that because arbitration is supposed to be a reasonable substitute for pursuing a claim in the courts, and because employees are not required to pay for a judge's services to adjudicate their claims in court, they should likewise not have to pay for an arbitrator's services. *Id.* at 1484 (citing *Gilmer, supra*). The *Cole* Court, ac-

knowledging the Supreme Court's "liberal federal policy favoring arbitration agreements", *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. 927, stated that fee-splitting provisions were "not an issue in *Gilmer* (and other like cases)," because in those security industry cases "it [was] the standard practice ... for employers to pay for all of the arbitrators' fees." *Id.* at 1483. Moreover, the *Cole* Court noted that in the security industry context "[e]mployees may be required to pay a filing fee, expenses, or an administrative fee, but these expenses are routinely waived in the event of financial hardship." *Id.* at 1483–84. The arbitration agreement in *Cole* was declared enforceable, however, because the Court interpreted the fee-splitting provision to be unclear and therefore placed the obligation of paying the arbitrator's fees with the employer. *Id.* at 1485–86.

Subsequent to the *Cole* decision, the Supreme Court issued its decision in *Green Tree*, which is particularly instructive on the question of whether the arbitration agreement in this case is enforceable in light of its fee-splitting provision. It is clear that *Green Tree* requires that a party resisting arbitration shoulder the initial burden of demonstrating that a requirement to pay arbitration fees would be prohibitively expensive by showing the "likelihood of incurring such costs." 531 U.S. at 92, 121 S.Ct. 513. In *Green Tree*, the Supreme Court found an arbitration agreement that was silent about the costs of the arbitration enforceable,[10] because, while

---

**9.** The arbitration provision in *Cole* was distinguishable from the agreement in this case because there is no indication here that arbitration is an option only available to the employer.

**10.** While the arbitration agreement in *Green Tree* was silent on the matter of fee-splitting, this Court agrees with the Fourth Circuit's assessment in *Bradford* that the Supreme Court's holding in *Green Tree*

is nevertheless instructive because it clearly analyzed the issue before it—whether the possibility of fee-splitting precludes a litigant from effectively vindicating her federal statutory rights in the arbitral forum—in terms of the individual litigant and the arbitration agreement before it, rather than in terms of a broad per se rule that would nullify or invalidate an entire category of arbitration provisions. *Bradford*, 238 F.3d at 557.

acknowledging that "large arbitration costs could preclude ... [the plaintiff] from effectively vindicating her federal statutory rights in the arbitral forum," the record did not contain any evidence that the plaintiff would bear any expenses that would have the effect of prohibiting her from arbitrating her statutory claims. *Id.* at 90–91, 121 S.Ct. 513. This Court finds it noteworthy that the Supreme Court focused in *Green Tree* on the individual employee's inability to demonstrate that she would be prohibited from vindicating her statutory rights in an arbitral forum because of the fees associated with arbitration. It is particularly significant that the *Green Tree* Court did not even hint that placing the responsibility to pay any portion of the arbitrator's fees on a party who files suit would invalidate an arbitration agreement, but rather suggested that a "large arbitration cost" could have that impact. *Id.* It is because of this language in *Green Tree* that this Court finds that the Supreme Court envisions a case-by-case analysis to determine whether fee-splitting arbitration agreements are unenforceable.

Following the *Green Tree* decision, the District of Columbia Circuit has placed limits on the per se application of its holding in *Cole* and only one Federal Circuit, the Ninth Circuit in *Circuit City*, 279 F.3d at 894, has concluded that a fee-splitting arbitration agreement was per se invalid.[11] In *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702 (D.C.Cir.2001), the D.C. Circuit Court upheld an arbitration award requiring the plaintiff "to pay a portion of the forum fees for arbitration of her statutory and non-statutory claims against her former employer." The *LaPrade* Court, in noting that the *Cole* decision does not bar certain forum fees such as filing fees and other administrative expenses, relied on two grounds to uphold the assessment of a portion of the arbitration fees against the plaintiff. First, the court stated that the minimal sum the plaintiff had to pay when compared to the overall cost of arbitration permitted it to conclude that there was "a substantial possibility that, fully consistent with *Cole*, the entire assessment against [the employee] cover[ed] only the costs associated with her non-statutory claims." *Id.* at 708. Second, the court was compelled to employ the Supreme Court's "liberal federal policy favoring arbitration agreements," *Id.* (quoting *Gilmer*, 500 U.S. at 25, 111 S.Ct. 1647), which is based on the rationale that "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the [statutory right created by Congress] will continue to serve both its remedial and deterrent function[s]." *Id.* (quoting *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647). Then citing *Green Tree*, the *LaPrade* Court, after referencing the "limited amount for forum fees [assessed] against [the plaintiff]," stated that the plaintiff had failed to make a "claim that the possibility of a large assessment arising from arbitration of her claims prevented her from attempting to vindicate her rights." *Id.* (citing *Green Tree*, 531 U.S. at 90, 121 S.Ct. 513). Following *LaPrade*, the Court in *Brown v. Wheat First Secs., Inc.*, 257 F.3d

---

**11.** While the Ninth Circuit in *Circuit City* stated that the fee-splitting arrangement "alone would render an arbitration agreement unenforceable," citing *Cole, supra,* the court based its decision on California law and found that the agreement invalid because it was "both procedurally and substantively unconscionable" as it was a contract of adhesion and did not afford the plaintiff "the benefit of the full range of statutory remedies." *Circuit City,* 279 F.3d at 892–95. This Court notes that the *Circuit City* case was before the Ninth Circuit on remand following the Supreme Court's reversal of the Circuit's prior decision finding that all employment contracts were beyond the FAA's reach. *See Circuit City,* 532 U.S. 105, 121 S.Ct. 1302.

821 (D.C.Cir.2001), declined to extend *Cole* to non-statutory state claims. The *Brown* Court, assumed for the plaintiff's benefit "that the Supreme Court's recent decision in *Green Tree* (citation omitted), finding that a party claiming that arbitration would be 'prohibitively expensive' must at least show 'the likelihood of incurring such costs,' (citation omitted), leaves *Cole* fully intact." *Id.* at 824. While the District of Columbia Circuit appears to have indicated its recognition that its decision in *Cole* might be in conflict with the Supreme Court's decision in *Green Tree, id.,* it has not to date had the occasion to directly address the question. Whether *Cole* remains "fully intact," in light of *Green Tree,* is not proper for this Court to decide. What this Court does conclude, however, is that *Cole* does not apply to the arbitration provision in this case.

The District of Columbia Circuit has cautioned that "[i]t would be quite a contortion of *Cole* to find that it had addressed a far broader subject than the case that it set out simply to refine." *Brown,* 257 F.3d at 825. The Court explained that in *Cole* its only "task . . . [was] to resolv[e] an 'issue not raised by the agreement in *Gilmer,'* . . . namely the fees issue", *Id.* (quoting *Cole,* 105 F.3d at 1483), in the context of "the federal statute in question there." *Id.* (citing *Gilmer,* 500 U.S. at 26–33, 111 S.Ct. 1647). The Court in *Brown* found "no basis for extending *Cole* . . . [because its] central rationale—respecting congressional intent—does not extend beyond the statutory context." *Id.* Therefore, because the plaintiff in *Brown* was pursuing a District of Columbia common law claim, the Circuit refused to extend *Cole* to the arbitration agreement at issue for two reasons: (1) the "liberal federal policy favoring arbitration agreements", *Id.* (quoting *Gilmer,* 500 U.S. at 25, 111 S.Ct. 1647), and (2) the non-existence of a competing "federal right-creating statute . . ." *Id.* at 826.

Moreover, of like significance on the question of the limited scope of *Cole* and whether it applies to the arbitration agreement in this case, is the language that the Circuit Court added to what *Gilmer* stated are enforceable arbitration agreements, which was the determination *Cole* sought to refine. *LaPrade,* 246 F.3d at 708. In *LaPrade,* the Circuit Court specifically added the language "statutory right created by Congress" to the proposition in *Gilmer* that its decision in *Cole* set out to refine: "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the [statutory right created by Congress] will continue to serve both its remedial and deterrent function." *Compare LaPrade,* 246 F.3d at 708 (quoting *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (citing *Mitsubishi,* 473 U.S. at 637, 105 S.Ct. 3346)) ("so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the [statutory right created by Congress] will continue to serve both its remedial and deterrent function."), *with Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi,* 473 U.S. at 637, 105 S.Ct. 3346) ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."). This addition was made in the context of the Court having before it causes of action based on federal statutes, a state statute, and common law claims. Surely, the Court in *LaPrade,* having both federal and state statutory claims before it, would not have added the language "statutory right created by Congress" to the proposition that it had set out to refine in *Cole* if it had intended for *Cole* to apply to all statutory rights. What is clear from the insertion of this language is the Circuit's clarification that *Cole* was only intended to apply to Congressionally enacted

statutory rights. Thus, *Brown* and *La-Prade*, when read in conjunction with what the Supreme Court stated in *Green Tree*, leads this Court to the conclusion that the per se invalidation rule announced in *Cole* does not apply to this case since only District of Columbia statutory and common law claims are being pursued.[12]

This Court must look to the decision in *Green Tree* and utilize the approach called for by the Supreme Court in deciding whether the arbitration agreement before this Court is enforceable. Accordingly, the Court must consider the specific circumstances of this case and will apply the burden-shifting test announced in *Green Tree* to determine whether the fee-splitting arbitration costs provision would effectively prohibit the plaintiff from vindicating her claims in an arbitral forum. Under this burden-shifting test, the "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring such costs."[13]  *Green Tree*, 531 U.S. at 92, 121 S.Ct. 513. Once that party makes an adequate showing of prohibitive expenses, the burden switches to "the party seeking arbitration [to] come forward with contrary evidence" that such expenses are not, in fact, prohibitive of the plaintiff seeking adjudication of her claims in an arbitral forum. *Id.* at 92–93, 121 S.Ct. 513. While there is no evidence in this record that the fees associated with arbitration will potentially prohibit the plaintiff from arbitrating her claims, the record does reveal that the employer has offered to "pay all fees and expenses of the mediator and, if necessary, the arbitrator." Def.'s Reply Ex. 1. Thus, even if the plaintiff had adequately demonstrated a prima facie showing of prohibitive expenses, the Court would conclude that the defendant's offer to pay all fees and expenses of arbitration effectively obviated any concerns the plaintiff may have raised regarding her ability to vindicate her claims in an arbitral forum because of the fee-splitting provision in the arbitration agreement. *See Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56–57 (1st Cir.2002) (First Circuit held that plaintiff was unable to show prohibitive expenses of arbitration because defendant agreed to cover the costs); *Blair*, 283 F.3d at 610 (Third Circuit suggested that the decision in *Green Tree* dictates that once the plaintiff makes an adequate showing of prohibitive arbitration expenses, the burden switches to the defendant to either prove otherwise or "offer to pay all of the arbitrator's fees."); *Nur*, 142 F.Supp.2d at 51 (district court in this Circuit held that although plaintiff alleged arbitration agreement was invalid because it did not indicate who would pay the costs of arbitration, the issue was moot because the defendant offered to pay the arbitrator in its pleading).[14]  Therefore, even in the

---

**12.** While this Court recognizes that District of Columbia statutes are enacted by the District of Columbia Council, and are therefore subject to Congressional review, 1 D.C.Code § 201.02(a) (2001), they are not Congressional statutes and are therefore akin to state statutes, 1 D.C.Code § 204.04(e) (2001).

**13.** The *Green Tree* Court did not address "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence," because the plaintiff failed to make a timely showing. 531 U.S. at 92, 121 S.Ct. 513.

**14.** Some courts post-*Green Tree* have resolved a plaintiff's assertion that arbitration fees are prohibitive only after granting limited discovery on this issue and allowing the plaintiff the opportunity to prove that such expenses will effectively deny access to a forum to adjudicate the plaintiff's claims. *See Large*, 292 F.3d at 56–57; *Blair*, 283 F.3d at 610. This will be unnecessary in this case, however, if the defendant definitively agrees to pay the arbitrator's fees.

absence of evidence about whether the plaintiff has the ability to pay part of the arbitration fee, the Court is satisfied that the plaintiff will be able to "effectively ... vindicate [her claims] in the arbitral forum." *Green Tree*, 531 U.S. at 90, 121 S.Ct. 513; *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647; *LaPrade*, 246 F.3d at 708; *Cole*, 105 F.3d at 1481 (all quoting *Mitsubishi*, 473 U.S. at 637, 105 S.Ct. 3346). For all the reasons set forth above, the Court has no reason to conclude that the arbitration agreement in this case is not enforceable.

### (2) *Are the Plaintiff's Allegations Encompassed by the Arbitration Agreement?*

■ Once a court finds that an arbitration agreement is an enforceable contract and that there are no special circumstances that would otherwise invalidate it, the court must then determine whether the plaintiff's claims are encompassed in the agreement. *Nur,* 142 F.Supp.2d at 51. The employment agreement at issue here requires that "'[a]ny dispute arising out of or relating to this Agreement, [the plaintiff's] performance or the [defendant's] performance thereunder, the terms and conditions of the [plaintiff's] employment by the [defendant], and/or the termination of such employment ... shall be resolved by binding arbitration." Def.'s Mot. Ex. 1. All of the plaintiff's claims concern allegations related to her employment and its termination, based on either racial or gender discrimination, retaliatory termination, or breach of implied contract, all arising out of the plaintiff's employment relationship with the defendant. *See Nur,* 142 F.Supp.2d at 51 (enforcing arbitration agreement over wrongful discharge and discrimination claims) (citing *McGinnis v. E.F. Hutton & Co.,* 812 F.2d 1011, 1015 (6th Cir.1987) (enforcing arbitration of

wrongful discharge claim)). Thus, it is clear that all of the plaintiff's claims are covered by the arbitration clause.

### V. *Conclusion*

For the reasons set forth above, this Court finds that the arbitration agreement entered into by the parties is a valid and enforceable contract because the plaintiff has failed to demonstrate any special circumstances that would invalidate this agreement, and because the plaintiff's allegations are encompassed within this agreement. While the FAA provides that once arbitration is compelled by a district court it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, this Court concludes this matter should be dismissed because neither party has requested that these proceedings be stayed, and dismissal is also in accordance with what other courts have done when all of the plaintiff's claims must be submitted to arbitration. *See Cole,* 105 F.3d at 1487 (District of Columbia Circuit affirmed district court's order dismissing the complaint and compelling arbitration); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir.2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Emeronye,* 141 F.Supp.2d at 88; *Nur,* 142 F.Supp.2d at 51. Thus, because the arbitration agreement is a valid and enforceable contract, this Court finds it appropriate to grant the defendant's motion for summary judgment so that the plaintiff can submit her claims to the appropriate arbitral forum.[15]

---

**15.** An Order consistent with the Court's rul- ing accompanies this Memorandum Opinion.

**SO ORDERED** this 12th day of August, 2002.

### *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE;** and, it is

**FURTHER ORDERED** that this dismissal is predicated upon the defendant's offer to "pay all fees and expenses of the mediator and, if necessary, the arbitrator." Therefore, in accordance with this offer made by the defendant, it shall file a stipulation to this effect with ten (10) days of the entry of this Order.[16] However, if the defendant no longer desires to comply with this offer, it shall so advise the Court and the Court will vacate this Order and schedule an evidentiary hearing for the purposes of addressing whether any imposed arbitration costs are prohibitive to the plaintiff's ability to submit her claims to arbitration. This is a final appealable order.[17]

**SO ORDERED** this 12th day of August, 2002.

[16] Upon receipt of a stipulation from the defendant regarding the payment of all fees and expenses of arbitration, the Court will dismiss this case with prejudice.

[17] This Order is a "final order", and therefore an appealable order, because it has disposed of the entire case, "leaving the court nothing to do but execute the judgment." *See Green Tree,* 531 U.S. at 85–89, 121 S.Ct. 513.