**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                        |     |                 |
|------------------------|-----|-----------------|
| KEITH TAYLOR,          | )   |                 |
|                        | )   |                 |
|     Plaintiff, | )   |                 |
|                        | )   |                 |
|     v.         | )   | 11-cv-1189 (RCL) |
|                        | )   |                 |
| FANNIE MAE, *et al.*,  | )   |                 |
|                        | )   |                 |
|     Defendants. | )   |                 |
|                        | )   |                 |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Pending before the Court is the defendants' motion [7] to dismiss the plaintiff's first amended complaint [11] or, in the alternative, motion to compel arbitration.[1] Upon consideration of the filings and the relevant law, the Court will GRANT the defendants' motion to compel arbitration.

**II.     BACKGROUND**

Plaintiff Keith Taylor ("Taylor") in this action claims he was wrongfully retaliated against after raising concerns that an employee was reporting fraudulent data to federal regulators. After complying with the administrative claims process before the Occupational Safety and Health Administration ("OSHA"), Taylor filed a complaint with this Court on June 28, 2011. *Id.* ¶ 87. Taylor subsequently amended his complaint on November 15, 2011. In the complaint, Taylor argues that if Fannie Mae is considered a private employer, the defendants

---

[1] After all briefings were filed with respect to the defendants' motion to dismiss Taylor's original complaint, Taylor amended his complaint to include an additional claim under the Sarbanes-Oxley Act. Both parties filed a joint stipulation, however, agreeing that no further briefing was necessary. Therefore, the Court addresses the defendants' motion to dismiss Taylor's original complaint here.

retaliated against him in violation of the Dodd-Frank Wall Street and Consumer Protection Act ("Dodd-Frank Act"), 15 U.S.C. § 78u-6 *et seq.*, and the Sarbanes-Oxley Act ("Sarbanes-Oxley"), 18 U.S.C.A. § 1514A. Taylor further alleges a common law claim for wrongful termination. *Id.* If, in the alternative, Fannie Mae is considered a government employer, Taylor's amended complaint alleges the defendants violated his constitutional rights under the First Amendment. The defendants assert the threshold contention that Taylor's executed employment agreement obligates him to submit such a dispute to arbitration.[2].

## II.    LEGAL STANDRD

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption in favor of enforcing arbitration agreements and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (stating that arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that federal policy favors arbitration). Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so. *AT & T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-49 (1986). Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Because arbitration provisions are in essence a matter of contract between the parties, it

---

[2] In March 2010, Taylor entered into an employment agreement. This agreement provided that if an employee has a claim involving a legally protected right, that indirectly or directly relates to his employment or the termination of that employment, he must arbitrate the claim prior to bringing suit in court. Def.'s Mot. Ex. 2.

is for the courts to decide whether the parties are bound by a given arbitration clause. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Such questions of arbitrability are typically brought before the court pursuant to section 4 of the FAA, which permits a party to petition any United States district court which would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/Esg*, *Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002). To make such a determination, courts must engage in a two-part inquiry. *Id.* at 149-50. First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement. *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001). If the court finds that the parties did enter a valid arbitration agreement, the second step is to determine whether the arbitration agreement encompasses the claims raised in the complaint. *Id.*

## III. ANALYSIS

Taylor does not challenge that he entered into a valid arbitration agreement but rather, he challenges the enforceability of his agreement. Sarbanes-Oxley provides protection for whistleblowers, stating that publicly traded companies are prohibited from "discharg[ing], demot[ing]," or otherwise harming or threatening an employee because of a lawful act done by the employee to provide information about company conduct that the employee believes to be unlawful. 18 U.S.C. § 1514A. While Sarbanes-Oxley claims were arbitrable at the time the law was originally enacted, the recent Dodd–Frank Act, enacted in July 2010, amended Section

1514A to prohibit arbitration of Sarbanes-Oxley claims. 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if [it] requires arbitration of a dispute arising under this section."). As the defendants are attempting to enforce a dispute resolution policy over a Sarbanes-Oxley claim, the question before the Court is whether the Dodd–Frank Act applies retroactively to arbitration agreements that existed prior to July 2010.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Supreme Court reaffirmed the judicial presumption against applying a statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to [completed] transactions." *Landgraf* and its sequelae prescribe a process for determining whether a statute applies to past conduct. We first look for an "express command" regarding the temporal reach of the statute, *id.,* or, "in the absence of language as helpful as that," determine whether a "comparably firm conclusion" can be reached upon the basis of the "normal rules of [statutory] construction." *Fernandez-Vargas v. Gonzales,* 548 U.S. 30, 37 (2006) (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). If we cannot reach a firm conclusion, then we turn to judicial default rules, asking whether applying the statute "would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.' " *Id.* (quoting *Landgraf,* 511 U.S. at 278). If applying the statute would have such a disfavored effect, then we do not apply it absent clear evidence in the legislative history that the Congress intended retroactive application. *See Landgraf*, 511 U.S. at 280; *Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 504 (D.C. Cir. 2009); *Koch v. SEC*, 177 F.3d 784, 786 n. 3 (9th Cir. 1999).

The key question in the instant action, then, is whether the Dodd-Frank Act's updated Sarbanes-Oxley provisions, contained in § 922 of the Dodd-Frank Act, would affect the

4

substantive rights of the parties.[3]  Because of its recent passage, very little precedent interpreting the Dodd-Frank Act exists.  Nevertheless, the parties have presented the Court with two non-binding, but opposed, cases supporting their respective positions.

The defendants rely on *Henderson v. Masco Framing Corp.*, 2011 WL 3022535 (D. Nev. July 22, 2011) to support their contention that applying the Dodd-Frank Act's Sarbanes-Oxley provisions retroactively would "fundamentally interfere with the parties' contractual rights and would impair the 'predictability and stability' of their earlier agreement."  Def.'s Mot. at 20-21.  The court in *Henderson* concluded that a retroactive revocation of the parties' rights to arbitrate Sarbanes-Oxley claims would impair the rights possessed by the parties when they acted.  *Henderson*, 2011 WL at *4.  Because it would impair a substantive right, the court held that a retroactive application would not "merely affect the jurisdictional location in which such claims could be brought."  *Id.*

In opposition, Taylor cites *Pezza v. Investors Capital Corp*, 767 F. Supp. 2d 225 (D. Mass. 2011) to support his contention that applying the statute retroactively would simply change the tribunal that is to hear the case.  Pl.'s Opp'n at 19.  The district court in *Pezza* engaged in a lengthy analysis of the Dodd-Frank Act before determining that, under the plain language of the statute, Congress' intent concerning the retroactivity of § 922 was unclear.  *Id.* at 232.  Allegedly acting under the impetus of Supreme Court precedent as elaborated in cases such as *Landgraf,* the court then examined the practical consequences of allowing § 922 to apply retroactively.  *Id.* at 232-35.  Asserting that a retroactive application of § 922 would merely affect the conferral of jurisdiction—a procedural right-rather than the substantive rights of the

---

[3] All courts that have addressed this issue agree that the portions of the Dodd-Frank Act addressing predispute arbitration do not evidence any express intent from Congress that they be applied retroactively.  *See e.g., Henderson v. Masco Framing Corp.*, 2011 WL 3022535 (D. Nev. July 22, 2011); *Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225 (D. Mass. 2011); *Homes v. Air Liquide USA LLC*, 2012 WL 267194 (S.D. Tex. Jan. 30, 2012).  This Court agrees and proceeds to address whether the presumption against retroactivity is rebutted in this case.

parties—the court held that § 922 qualifies as just the sort of quasi-retroactive statutory provision that can be applied retroactively because it does not have affect the parties substantive rights. *See Id.* at 233-34.

After reviewing the relevant case law, the Court agrees with the ruling in *Henderson*. At the time Taylor agreed to the dispute resolution policy in 2010, the parties had the right to contract for the arbitration of Sarbanes-Oxley claims. Further, the agreement states that the arbitration clause applies to all claims dealing with legally protected rights that directly or indirectly relate to the termination of his employment. Def.'s Mot. Ex. 2. Therefore, the Court here fails to see how a retroactive application would not impair the parties' rights possessed when they acted. Accordingly, the Court finds that Taylor's Sarbanes-Oxley and Dodd-Frank claims fall within the provisions of the valid arbitration agreement and, recognizing the FAA's mandatory enforcement of such valid arbitration agreements, the Court grants the defendants' motion to compel arbitration with respect to the three claims asserted against it as a private employer.[4]

Because the Court does not reach the merits on whether Fannie Mae is considered a public or private employer, the Court dismisses Taylor's First Amendment claim without prejudice, noting that Taylor may obtain the relief he seeks from the remaining claims in arbitration. The Court will not unnecessarily reach and determine what, if any, constitutional claim may be maintained.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion [7] to compel arbitration. The Court DISMISSES WITH PREJUDICE Taylor's Dodd-Frank, Sarbanes-Oxley,

---

[4] Taylor does not argue that his additional claim, asserting the defendants wrongfully terminated him in violation of public policy, escapes the arbitration clause in his employment agreement. For this reason, the Court will submit this claim to arbitration as well.

6

and wrongful termination claims; however, the Court DISMISSES WITHOUT PREJUDICE, Taylor's First Amendment claim.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 20, 2012.