*274 SACK, Circuit Judge,
concurring dubitante[1]:
I fully agree with the majority insofar as it concludes that the phrase “required to be arbitrated by the FINRA Rules” in the employment agreement (the “Chase Agreement”) modifies the phrase “[a]ny claim or controversy” such that, under the terms of the Chase Agreement, only those claims, if any, that are required to be arbitrated under the FINRA Rules are subject to arbitration. See ante at 273.
I write to express my concern, however, about the panel’s conclusion that New Rule 13204, which amended Old Rule 13204 (as those terms are defined in the majority opinion) by adding collective actions to the list of those not arbitrable under FINRA rules, necessarily applied to the instant case even though at the time that the Chase Agreement was entered into, Old Rule 13204, not New Rule 13204, was in effect.[2]
The Majority’s Approach. The parties paid relatively little attention to this issue in the district court and on appeal. That may account for the majority’s giving it what seems to me to be rather short shrift.
In a two-paragraph analysis addressed to the “problem of retroactivity” raised by Chase, the majority observes that it is not unusual for contract terms to be “subject to the impact of future developments,” and that in this case the future developments were a change in “the forum’s rules.” Id. at 273. Moreover, because FINRA had already “informally taken the position that collective actions[3] cannot be arbitrated, even under Old Rule 13204,” the majority concludes that therefore “the amendment of Old Rule 13204 did not upset expectations.” Id. at 273.
Separately, in addressing the intent of the parties at the time the contract was signed, the majority asserts that because the arbitrable claims are required to be resolved “in accordance with” the FINRA Rules, and the operative rule 13204 (New Rule 13204) provides that a collective action “shall not be arbitrated” by FINRA, the Chase Agreement must therefore be read to incorporate New Rule 13204. Id. at 273. The majority is of the view that to hold otherwise would require the Court to find that the parties intended to arbitrate their claims before a body that “under its own rules, cannot hear them,” and that “the parties could not have intended” such a-result. Id. at 273.
I think a more detailed and thorough inquiry would be necessary before I could comfortably reach a firm conclusion as to whether or not the provisions of New Rule 13204 apply to this dispute.
The Relative Importance of the Issue. I am not sure the majority is wrong. But I see no reason to engage in such a “de *275 tailed and thorough inquiry” myself in order to become more certain than I am, one way or the other, for at least two reasons. First, should I come to a firm view that New Rule 13204 cannot be applied here, it will not matter to the parties because a majority of this Court holds otherwise; the New Rule will be applied in any event, and the holding will remain the same. Second, and more importantly, were I to reach a contrary view that is persuasive, it will be of little use to anyone. Nearly three years have elapsed since the adoption of the New Rule. Its retroactive effect, if any, should become increasingly irrelevant to the resolution of collective actions contractually designated as “arbitrable by the FINRA rules” because disputes will increasingly arise out of contracts entered into more recently than was the Chase Agreement, and after the New Rule 13204, clearly foreclosing collective FINRA arbitrations, became effective. In light of what seems to be the likely limited nature of our holding on this point, I write briefly to do no more than articulate the basis for my doubt as to the majority’s methodology.
Another Approach. In Wong v. CKX, Inc., 890 F.Supp.2d 411 (S.D.N.Y.2012) (Koeltl, J.), the United States District Court for the Southern District of New York considered a dispute at least superficially similar to that addressed in the case at bar. The court sought to determine whether Section 22 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (“Dodd-Frank”), Pub.L. No. 111—203, Title IX, §§ 922(b)-(c), 929A, 124 Stat. 1848, 1852 (2010), which modified the arbitration rules outlined in the Sarbanes-Oxley Act (“Sarbanes-Oxley”), 18 U.S.C. § 1514A(e)(2), was intended to apply retroactively to an employment contract containing an arbitration provision that was otherwise governed by Sarbanes-Oxley. Wong, 890 F.Supp.2d at 420-21. The contract had been entered into prior to Dodd-Frank taking effect. Before 2010, complaints alleging a violation of Sarbanes-Oxley’s whistleblower protection provision could therefore be made subject to mandatory arbitration pursuant to an agreement between the parties. Dodd-Frank amended that rule: “No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [the Sarbanes-Oxley whistleblower protection provision].” Id. at 421 (quoting 18 U.S.C. § 1514A(e)(2) (brackets in original)).
The defendant in Wong moved to compel arbitration in a “whistleblower” suit pursuant to an employment contract that required such arbitration and that was entered into before Dodd-Frank went into effect. The question before the district court was whether the plaintiff could take advantage of the new law’s prohibition even though it was enacted after she entered into the contract; indeed all the relevant behavior of the parties occurred before Dodd-Frank became law. “Therefore,” noted the court, “the issue [was] whether to apply the [later] amendment to the present dispute.” Id.
The court began its analysis by stating widely accepted general principles.
Generally, “retroactivity is not favored in the law. Thus, congressional enactments and administrative' rules will not be construed to have retroactive effect unless their language requires this result.” Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 [109 S.Ct. 468, 102 L.Ed.2d 493] (1988). However, the Supreme Court has also instructed that there are many situations in which courts must “apply the law in effect at the time [they] render [a] decision.” Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).

Id.

*276 The district court then looked to the Supreme Court’s decision in Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 328 (2006), which provides a “three-step process for determining whether a 'Statute should be retroactively applied to affect some allegedly vested right that existed prior to a statute’s enactment or to impose some new burden.” Wong, 890 F.Supp.2d at 421 (citing Fernandez-Vargas, 548 U.S. at 37-38, 126 S.Ct. 2422). Step one requires a determination as to “whether Congress has expressly prescribed the statute’s proper reach.” Fernandez-Vargas, 548 U.S. at 37, 126 S.Ct. 2422. If the answer is no, the court moves to step two, deciding “whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment.” Id. (internal quotation marks and brackets omitted). “If the answer is yes, [the court] then applies] the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result.” Id. at 37-38, 126 S.Ct. 2422 (internal quotation marks and brackets omitted).
The Wong court ultimately reached a decision roughly similar to that reached by the majority in this appeal — the new arbitration rules applied to an old arbitration agreement. The court did so, however, by engaging in step two of the prescribed analysis: It concluded that “[t]he right to have a dispute heard in an arbitral forum is a procedural right that affects the forum that will decide the substantive rights of the parties. Therefore, applying the present law to this dispute would not have a disfavored retroactive consequence.” 890 F.Supp.2d at 423.
Other district courts have Considered the issue addressed in Wong. At least one has arrived at the same conclusion; others have not. Compare Pezza v. Investors Capital Corp., 767 F.Supp.2d 225, 233-34 (D.Mass.2011) (concluding that Dodd-Frank § 922 changed only the procedural rights of the parties and therefore could be applied retroactively), with Taylor v. Fannie Mae, 839 F.Supp.2d 259, 263 (D.D.C.2012) (“the Court here fails to see how a retroactive application would not impair the parties’ rights possessed when they acted”; retroactive effect not given; arbitration compelled) (citing Henderson v. Masco Framing Corp., 2011 WL 3022535, 2011 U.S. Dist. LEXIS 80494 (D.Nev. July 22, 2011)). Irrespective' of their outcomes, though, these courts proceeded as had the Wong court by applying the test set forth in Femandez-Vargas.
To be sure, the case before us is plainly distinguishable from both Fernandez-Vargas and Wong, most obviously because FINRA rules, although perhaps comparable to the statutes considered by the district courts for present purposes, are not federal statutes. But see Sacks v. S.E.C., 648 F.3d 945, 950 (9th Cir.2011) (applying the retroactivity test articulated in Fernandez-Vargas to FINRA Rules). These decisions do, however, illustrate the complexity involved in determining the retroactive application of new rules to existing contracts. In the case at bar, the majority reaches its conclusion without acknowledging or grappling with that complexity.
Moreover, even assuming arguendo that none of. the retroactivity principles or frameworks employed by the district courts in the Dodd-Frank cases is applicable in the situation presented here, the majority’s approach is not free from doubt. The Chase Agreement presents an issue of contractual ambiguity as to the parties’ intent with respect to the incorporation of new FINRA rules. When faced with ambiguity, courts ordinarily consider “[e]xtrin- *277 sic evidence of the parties’ intent.” Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002). The district court does not appear to have engaged in such an inquiry; the majority has largely avoided unpacking the issue by opining that “the parties could not have intended to arbitrate claims before an arbitrable body that, under its own rules, cannot hear them.” Ante at 273. As noted, the majority asserts that a FINRA arbitral body will not hear plaintiffs’ collective action claims because the New Rule 13204 indicates that it should not do so. But I am unaware of an instance in which FINRA arbitrators formally declined to “grandfather-in” the parties that were previously subject to the Old Rule, which had been read by at least some district courts[4] to classify the plaintiffs’ FLSA claims as an arbitrable controversy.
If “impossibility of performance” or “frustration of purpose” ultimately manifests itself, then there is long-standing precedent to which courts in this Circuit can look to address the parties’ interests. See United States v. Gen. Douglas MacArthur Senior Vill., Inc., 508 F.2d 377, 381 (2d Cir.1974). If it is determined that the parties are contractually bound to have collective claims arbitrated by a FINRA arbitral body and should that body refuse, courts — including this Court if necessary— can then decide how the dispute should be resolved.
Conclusion. For the foregoing reasons, “I join the majority’s [decision], albeit a mite queasily,” Order Denying Petition for Rehearing, United States v. Guevara, 298 F.3d 182 (2d Cir.), on reconsideration, 298 F.3d 124 (2d Cir.2002) (Calabresi, J., concurring dubitante), insofar as it addresses the question of the retroactivity of New Rule 13204 and the arbitrability of collective claims.

.See Bierenbaum v. Graham, 607 F.3d 36, 59 (2d Cir.2010) (Calabresi, J., concurring dubitante); Aurecchione v. Schoolman Transp. Sys. Inc., 426 F.3d 635, 639 (2d Cir.2005) (Kearse, J., concurring dubitante); Feldman v. Allegheny Airlines, Inc., 524 F.2d 384, 390 (2d Cir.1975) (Friendly, J., concurring dubitante); see also Debra Cassens Weiss, 7th Circuit Judge Writes One-Sentence "Maybe” Concurrence; Was it a "Dubitante" Opinion?, ABA Journal (June 3, 2015), http://www.abajournal.com/ news/article/7th_cABArcuit_judge_writes_ one_sentence_maybe_concurrence_was_it_a_ dubitante/?utm_campaign=weekly_email& job_id= 150603AT&utm_medium=email& utm_source=maestro (suggesting use of the term "dubitante” as appropriate for a concurrence that concludes the majority may be right).

. Further complicating matters, Old Rule 13204, arguably permitting collective actions, was still in effect even at the time this litigation was commenced. See ante at 273.

. The plaintiffs' collective action claims were brought under the FLSA.

. See e.g., Velez v. Perrin Holden & Davenport Capital Corp., 769 F.Supp.2d 445, 447 (S.D.N.Y.2011) (“Every court to address whether an FLSA collective action is arbitra-ble pursuant to [Old Rule 13204] has found in favor of arbitrability.”)