**Linda E. LaPRADE, Appellant,**

v.

**KIDDER, PEABODY &
CO., INC., Appellee.**

**No. 00–7082.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 16, 2001.

Decided April 24, 2001.

Rehearing En Banc Denied
June 14, 2001.

Steven W. Teppler argued the cause for appellant. With him on the briefs was Frazer Walton, Jr.

Kathy B. Houlihan argued the cause for appellee. With her on the brief was Andrew J. Schaffran.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Linda E. LaPrade appeals the confirmation of an arbitration award requiring her to pay a portion of the forum fees for arbitration of her statutory and non-statutory claims against her former employer.[1] She contends that assessment of the forum fees contravenes *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997), where the court held when a federal statutory claim is subjected to arbitration pursuant to an arbitration

agreement executed as a condition of employment, an employee cannot be required to pay arbitration-related costs that are analogous to a judge's salary or expenses in a traditional judicial forum. Because LaPrade has not met her burden of demonstrating that the arbitrators acted in manifest disregard of the law, we affirm.

## I.

In January 1989 LaPrade began working for Kidder Peabody in the State of New York as an Assistant Vice President and Manager of the New Issue Agency Syndicate, and in July 1989 she was promoted to Vice President, Product Manager–Agency Bond Trading. Her position at Kidder Peabody required her to be a registered representative in the securities industry, which, in turn, required that she execute a Uniform Application for Securities Industry Registration or Transfer, or "Form U–4."[2] By signing the Form U–4 LaPrade agreed to arbitrate any claims that might arise between her and Kidder Peabody.[3]

Following a series of disagreements with her employer, LaPrade left Kidder Peabody in October 1991. Thereafter, she sued her former employer in the United States District Court for the District of Columbia for breach of contract, fraud, and for violations of federal and state law. Over LaPrade's objection, the district court granted Kidder Peabody's motion to stay the lawsuit pending arbitration. The

---

**1.** This case was previously before the court on a matter unrelated to the instant appeal. *See LaPrade v. Kidder, Peabody & Co.*, 146 F.3d 899 (D.C.Cir.1998).

**2.** *See* 15 U.S.C. § 78s (1994); 17 C.F.R. § 240.15b7–1 (2000); NASD Regulation Rules 1031 (a)-(b), 1013(a)(2)(B), http://secure.nasdr.com/wbs/NETbos.dll?RefShow?ref

=NASD4;&xinfo=/goodbye.htm (last visited March 28, 2001).

**3.** LaPrade's Form U–4 states in relevant part: I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitution, or by-laws of the organizations with which I register. . . .

parties then pursued arbitration before the National Association of Securities Dealers, Inc. ("NASD") under the terms of the arbitration clause contained in LaPrade's Form U–4.

In the arbitration proceedings, LaPrade claimed gender discrimination under Title VII and New York state law, and denial of equal pay under New York state law and the Federal Equal Pay Act, as well as common law defamation and fraud. The arbitration panel conducted seven prehearing conferences and 67 hearing sessions from November 1994 to May 1999. In October 1999, the arbitration panel dismissed LaPrade's statutory claims for discrimination under New York and federal law, but granted her injunctive relief with respect to her Form U–5 and ordered Kidder Peabody to pay her $65,000.00.[4] The panel decision stated that "all other claims not specifically addressed … are denied in their entirety, including defamation and fraud." In addition, while ordering that "[e]ach party shall be responsible for its own attorneys' fees and other costs related to this arbitration," the arbitration panel assessed forum fees, totaling $69,800.00, save 12%, against Kidder Peabody. *See* NASD Code of Arbitration Procedure Rule 10205(c). Thus, LaPrade was ordered to pay 12%, or $8,376.00.[5]

Kidder Peabody returned to the district court, filing a motion to lift the stay and confirm the arbitration award. LaPrade filed a cross motion to vacate the arbitration award insofar as it directed her to pay $8,376.00 in forum fees. The district court confirmed the arbitration award. Concluding that the law regarding the assessment and allocation of arbitral forum fees was neither "well defined, explicit, [nor] clearly applicable" to her case, the district court rejected LaPrade's argument that the arbitration panel had acted in manifest disregard of the governing law in this circuit in assessing and allocating arbitral fees. In the district court's view *Cole* was not dispositive, and it followed *Sobol v. Kidder, Peabody & Co., Inc.*, 49 F.Supp.2d 208 (S.D.N.Y.1999). In *Sobol* the court distinguished *Cole* and ruled that assessment against a former employee of half of the arbitral forum fees neither offended public policy nor discouraged arbitration because NASD rules authorized the sharing of expenses and arbitration is generally less expensive than traditional litigation in court. *Id.* at 224. Finally, noting the scope of permissible fees identified in *Cole*, the district court found that LaPrade had not demonstrated that the panel's award lacked colorable support in the record.

4. After LaPrade left the firm, Kidder Peabody filed a Uniform Termination Notice for Securities Industry Registration, or "Form U–5," stating that "[d]uring the course of an inquiry by firm personnel, Ms. LaPrade initially provided information which the firm believed to be inaccurate (inadvertently, by her account), which she subsequently clarified. She was then permitted to resign." *See* 15 U.S.C. § 78o–5 (1994 & Supp. V 1999); 15 U.S.C. § 78ff(a) (1994); 17 C.F.R. § 400.4 (2000). As part of the relief ordered by the arbitration panel, Kidder Peabody was ordered to revise the explanation section of the Form U–5 to read: "During the course of an inquiry by firm personnel, Ms. LaPrade offered to provide her cooperation and information if the firm agreed to permit her to resign, and the firm agreed."

5. The arbitration panel assessed forum fees for six pre-hearing conferences at $300.00 each, one pre-hearing conference with the full panel at $1,000.00, and 67 hearing sessions at $1,000.00 per session. *See* NASD Code of Arbitration Procedure Rule 10205(k) (schedule of fees). Deducting the balances previously deposited, the panel directed LaPrade to pay $6,776.00, and Kidder Peabody to pay $50,824.00. The assessment against LaPrade was independent of the $250.00 non-refundable filing fee that she had previously paid; the panel ordered that the filing fee be retained by NASD.

## II.

■■ It is well settled that a court's review of an arbitration award is limited. In addition to the limited statutory grounds on which an arbitration award may be vacated,[6] "arbitration awards can be vacated [only] if they are in 'manifest disregard of the law,'" *Cole*, 105 F.3d at 1486 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)), or "if they are contrary to 'some explicit public policy' that is 'well defined and dominant' and ascertained 'by reference to the laws or legal precedents.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C.Cir.1991) (citing *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C.Cir.1989)). Consequently,

> to modify or vacate an award on this ground, a court must find that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

*DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997) (quotations omitted); *see also Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996).

■■ As the party seeking to vacate or otherwise modify the arbitration award, LaPrade bears the burden of demonstrating that the arbitration panel acted in manifest disregard of the law. *See Al–Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C.Cir.1996); *DiRussa*, 121 F.3d at 825; *cf. Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (Dec. 11, 2000); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Our review of the district court's factual findings in the order confirming the arbitration award is for clear error, while the court reviews questions of law *de novo*. *See First Options*, 514 U.S. at 947–48, 115 S.Ct. 1920.

In *Gilmer*, the Supreme Court held that federal statutory claims alleging age discrimination in employment could be subjected to compulsory arbitration pursuant to an arbitration agreement that an employee was required to sign as a condition of employment. *See Gilmer*, 500 U.S. at 23, 111 S.Ct. 1647. Subsequently, in *Cole*, this court was confronted with the question "can an employer condition employment on acceptance of an arbitration agreement that requires the employee to submit his or her statutory claims to arbitration and then requires the employee to pay all or part of the arbitrators' fees?" *Cole*, 105 F.3d at 1483. The district court had dismissed Cole's complaint alleging claims under Title VII and compelled arbitration pursuant to the parties' agreement. *Id.* at 1467. This court upheld the arbitra-

---

**6.** Under the Federal Arbitration Act, 9 U.S.C. § 10 (1994), an arbitration award may be vacated where:

> (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

LaPrade makes no claim of such error here.

tion agreement. *Id.* at 1485. But reasoning, in reliance on *Gilmer*, that there was no reason to conclude that the Supreme Court would have approved mandatory arbitration where the employee had to pay the cost of the arbitrator's services, *id.* at 1484, the court also concluded that "Cole could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees or expenses." *Id.* at 1485. The court noted that the arbitration agreement executed by Cole did not explicitly address the issue and merely incorporated the American Arbitration Association rules, which were silent on the question of which party should bear the arbitrator's fees and expenses. *Id.* Thus, to uphold the validity of the parties' contract, the court interpreted the arbitration agreement to require the former employer to pay all arbitrators' fees in connection with the resolution of Cole's claims.[7] *Id.* at 1486.

█ Contrary to LaPrade's contention that the assessment of arbitral forum fees contravenes *Cole*, *Cole* does not bar the assessment of all forum fees against an employee. In *Cole* the court explained that an employee who executed a compulsory arbitration provision as a condition of employment could be "required to assume the [reasonable] costs of filing fees and other administrative expenses" arising from arbitration of statutory claims because "parties appearing in federal court" may likewise be required to pay such costs. *Id.* at 1484. Other than by misinterpreting *Cole* to afford her a right to arbitration as a virtually cost-free alternative to traditional court proceedings, LaPrade makes no claim that the panel otherwise lacked authority to assess and allocate forum fees. LaPrade nonetheless contends that the district court erred in confirming the arbitral award because the assessment of forum fees violates public policy by burdening the assertion of her federal statutory right to be free from gender discrimination. Unfortunately for LaPrade, she has not met her burden of demonstrating that the arbitration panel acted in manifest disregard of the law or in violation of public policy. *See Al–Harbi*, 85 F.3d at 683; *DiRussa*, 121 F.3d at 825; *cf. Green Tree*, 121 S.Ct. at 522; *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

First, LaPrade makes no showing that the arbitration panel, which was aware of *Cole*, "refused to apply [*Cole*] or ignored [*Cole*] altogether." *DiRussa*, 121 F.3d at 821; *see also Kanuth*, 949 F.2d at 1182. Rather, she relies on the unjustified assumption that the forum fees assessed against her are the type of costs forbidden by *Cole*.[8] Under the NASD's rules, two of the arbitrators were entitled to compensation in the amount of $200.00 per hearing session while the chairperson of the panel was entitled to $275.00 per hearing session.[9] Therefore, of the $1,000.00 assessed for each hearing session with the full panel, $325.00 cannot be characterized as arbitrators' compensation. LaPrade's assess-

7. In *Cole*, the court defined "arbitrators' fees" to include not only the arbitrator's honorarium, but also the arbitrator's expenses and any other costs associated with the arbitrator's services.
105 F.3d at 1484 n. 15.

8. At oral argument, LaPrade noted that she paid the $250.00 filing fee and $5.00 in copying costs, that the parties paid court reporter fees, and that the proceedings were conduct-ed on the premises of the NASD. Consequently, LaPrade argued, because there were no other costs left to be paid, the forum fees assessed by the arbitration panel must be the type prohibited by *Cole*.

9. *See* NASD Code of Arbitration Procedure Rule IM–10104, at *http://www.nasdadr.com/arb_code/arb_code#IM_10104* (last updated March 15, 2001).

ment, in turn, appears to be well below that amount.[10]

◼ In any event, there is a substantial possibility that, fully consistent with *Cole*, the entire assessment against LaPrade covers only the costs associated with her non-statutory claims. Given the lengthy nature of the parties' proceedings, spanning six years and involving 74 arbitral sessions, it is reasonable to conclude, as Kidder Peabody suggests, that the forum fees assessed against LaPrade were attributable to arbitration of her non-statutory claims. LaPrade protests that Kidder Peabody's proposed reasonable conclusion is speculative, but she has failed to provide an evidentiary basis for any alternate conclusion, and it is her burden to do so. *See Al–Harbi*, 85 F.3d at 683; *DiRussa*, 121 F.3d at 825; *cf. Green Tree*, 121 S.Ct. at 522; *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

◼ Second, in articulating the " 'liberal federal policy favoring arbitration agreements,' " *Gilmer*, 500 U.S. at 25, 111 S.Ct. 1647 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), the Supreme Court explained that "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the [statutory right created by Congress] will continue to serve both its remedial and deterrent function[s]." *Id.* at 28, 111 S.Ct. 1647 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). While the court in *Cole* declined to read *Gilmer* "as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes," 105 F.3d at 1482, LaPrade has not shown that the arbitration panel manifestly disregard-

ed *Cole* in assessing a limited amount of forum fees against her. LaPrade makes no claim that the possibility of a large assessment arising from arbitration of her claims prevented her from attempting to vindicate her rights. *See Green Tree*, 121 S.Ct. at 522. Neither does she claim that the arbitration panel failed to consider the evidence that she submitted to show she was financially unable to pay any assessment. That evidence consisted of her W–2 forms from 1993 through 1998 and a single commission statement for January 1999, which the arbitration panel might reasonably view as an incomplete portrait of her financial resources. Because LaPrade has not demonstrated that the assessment against her runs afoul of the balance of public policies struck in *Cole*, her effort to have the assessment vacated on public policy grounds fails.

Accordingly, we affirm the district court's order confirming the arbitration award.

---

10. Kidder Peabody suggests in its brief that LaPrade's per session share of the non-compensation costs ($325.00, or $1,000.00 minus a total of $675.00) is $113.19, and LaPrade does not contest this figure in her reply brief.