# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 3, 2025          Decided April 7, 2026

No. 24-7185

UNITED MEXICAN STATES,
APPELLANT

v.

LION MEXICO CONSOLIDATED L.P.,
APPELLEE

HECTOR CARDENAS,
MOVANT-APPELLANT

———

Consolidated with 24-7186

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cv-03185)

———

*Stephan E. Becker* argued the cause for appellant United Mexican States. With him on the briefs was *Gary J. Shaw*.

*Luis A. Parada* argued the cause for movant-appellant Hector Cardenas. With him on the briefs was *Csaba M. Rusznak*.

*John M. Conlon* argued the cause for appellee. With him on the briefs was *Kevin B. Weehunt Jr. Reginald R. Goeke* entered an appearance.

Before: PILLARD, WALKER and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Mexico seeks to vacate an arbitration award resolving an investment dispute between Mexico and Lion Mexico Consolidated, a Canadian investor. Applying provisions of the North American Free Trade Agreement, a panel of arbitrators ordered Mexico to pay Lion $47 million in compensation for the country's failure to protect the company's investments in real estate projects in Mexico. Mexico petitioned our district court to vacate the arbitral award on the grounds that the arbitrators exceeded their powers and acted in manifest disregard of the law. The district court held the arbitrators acted within their authority and with appropriate regard for the law, so denied Mexico's petition and granted the investor's cross-petition for confirmation of the award. Mexico appeals. Separately, Héctor Cárdenas Curiel, a Mexican businessman involved in the events that gave rise to the arbitration, moved to intervene in the district court proceedings. The district court denied intervention, and Cárdenas appeals. We affirm in full.

## I.

## A.

The North American Free Trade Agreement (NAFTA) was a multilateral treaty between the United States of America, Mexico, and Canada that sought to facilitate trade and

economic activity, including cross-border investment, among the three nations.  North American Free Trade Agreement, Dec. 17, 1992, 107 Stat. 2057, 32 I.L.M. 289.  NAFTA is no longer in effect since it was superseded on July 1, 2020, by the U.S.-Mexico-Canada Agreement.  *See* United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020).  But the arbitration at issue here, instituted in December 2015, was governed by NAFTA, and NAFTA's intervening repeal has no effect on its applicability to this dispute.

Among NAFTA's provisions to encourage cross-border investment—memorialized in Chapter 11 of NAFTA—was the requirement that each party "accord to investments of investors of another Party treatment in accordance with international law, including fair and equitable treatment and full protection and security."  NAFTA art. 1105(1).  NAFTA allowed foreign investors to initiate arbitration proceedings directly against a party government for violating the protections of Chapter 11, including Article 1105(1).  *See id.* art. 1120(1).  The treaty established the Free Trade Commission, an entity comprising the trade ministers of the three NAFTA signatories, to supervise its implementation and interpretation.  The Commission's interpretations of NAFTA bound any arbitral tribunal convened to adjudicate a dispute under the treaty.  *Id.* arts. 1131(2), 2001(1).

A petition in United States court to confirm an arbitral award based on a treaty to which the United States is a party may proceed under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, which recognizes such a treaty as federal law, *id*. at § 201.  *See, e.g.*, *BG Grp. PLC v. Rep. of Argentina*, 572 U.S. 25, 44 (2014); *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879 n.2 (D.C. Cir. 2021).  The FAA establishes a "federal policy favoring arbitration" and requires

federal courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted). Limited judicial review protects the "prime objective" of an agreement to arbitrate, which is "to achieve 'streamlined proceedings and expeditious results.'" *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 633 (1985)). Judicial power to vacate arbitral decisions is accordingly confined to "very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The FAA lists four grounds on which a court may vacate an arbitration award. *See* 9 U.S.C. § 10(a). At issue in this case is the fourth ground: "where the arbitrators exceeded their powers." *Id*.

A party seeking vacatur of an arbitral award on the ground that the arbitrators "exceeded their powers" bears a "heavy burden." *Oxford Health Plans*, 569 U.S. at 569. It is not enough for the challenger to show that the arbitrators "committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral award "even arguably construing or applying the contract" will stand, "regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569 (internal quotation marks omitted). Only when arbitrators exceed the scope of their delegated authority by "issuing an award that simply reflects [their] own notions of economic justice rather than drawing its essence from the contract" will the arbitrators' decision be set aside. *Oxford Health Plans*, 569 U.S. at 569 (formatting modified)*.* Thus, "the sole question" for a court entertaining a petition for relief under Section 10(a)(4) is "whether the arbitrator (even

arguably) interpreted the parties' contract, not whether [they] got its meaning right or wrong." *Id.*

**B.**

Lion Mexico Consolidated, L.P. (Lion) is a Canadian company that made loans to companies owned by a Mexican businessman named Héctor Cárdenas Curiel (Cárdenas) to finance real estate projects in Mexico. *United Mexican States v. Lion Mexico Consolidated, L.P.*, 757 F. Supp. 3d 18, 23 (D.D.C. 2024). The parties documented the loans through mortgages to Lion on the real property and promissory notes to Lion as unconditional commitments to repay the loans. *Id.*; *see* Arbitration Award (Award), Annex A (Decision on Jurisdiction) ¶ 58 (J.A. 252). Cárdenas's companies, however, never made a single payment on the loans. *United Mexican States*, 757 F. Supp. 3d at 23. After Lion's fruitless efforts to recoup its investment through direct negotiation with Cárdenas and litigation in Mexican courts that Cárdenas stymied, Lion initiated arbitration proceedings against the government of Mexico in December 2015. Award ¶ 12 (J.A. 37).

The arbitration was seated in Washington D.C. *Id.* ¶ 40 (J.A. 40). As relevant here, Lion claimed that Mexico had failed to grant its loan-based investments the protections required by Article 1105(1) of NAFTA. *See* Award ¶ 187 (J.A. 76). Lion contended that Article 1105(1) protected each form of financing that it had provided to Cárdenas's companies: the mortgages and the promissory notes. *See United Mexican States*, 757 F. Supp. 3d at 29. In response, Mexico objected that the arbitral tribunal (Tribunal) lacked jurisdiction over Lion's Article 1105(1) claims because neither the mortgages nor the promissory notes qualified as "investments" as that term was defined in NAFTA. *See* Decision on Jurisdiction ¶ 98 (J.A. 260). Mexico further contended that, even if Lion had

made qualifying "investments," Lion could not obtain relief because Article 1105(1) protected only investments and not investors. Mexico's Counter Memorial ¶ 141 (J.A. 322).

On September 9, 2021, the Tribunal handed down its award in Lion's favor. The Tribunal found that when Lion tried to recoup its investments in the Mexican courts, Cárdenas orchestrated a scheme of "complex judicial fraud" to frustrate any recovery. Award ¶ 94 (J.A. 51). Specifically, the Tribunal found that a Mexican court judgment purporting to cancel Lion's loans to Cárdenas's companies rested on a forged settlement agreement Cárdenas had prepared. *Id.* ¶¶ 94-95, 103 (J.A. 51-52, 54). The Tribunal further found that, despite Lion's repeated attempts to establish that the putative agreement undergirding the apparent cancellation judgment had been forged, Lion obtained no relief from the Mexican courts. *See id.* ¶¶ 138-79 (J.A. 63-72); *United Mexican States*, 757 F. Supp. 3d at 23-25.

Based on those findings, the Tribunal determined that Mexico breached its Article 1105 obligations to Lion. Award ¶ 354 (J.A. 110). As a threshold matter, the Tribunal concluded that it had jurisdiction over Lion's Article 1105 claims as to the mortgages, but not as to the promissory notes, because only the former qualified as "investments" under NAFTA. Decision on Jurisdiction ¶ 266 (J.A. 293). On the merits, the Tribunal concluded that Article 1105(1) "protects investments and investors," rejecting Mexico's argument that the provision "only extends protection to investments, but not to investors." Award ¶ 356 (J.A. 110). And Mexico breached its Article 1105(1) obligations to Lion because Mexico's courts repeatedly failed to provide Lion a fair opportunity, consistent with the "customary international law minimum standard of treatment of aliens," to vindicate its rights to its investments. *Id.* ¶¶ 210, 299, 506-509 (J.A. 81, 98, 138). The Tribunal

consequently ordered Mexico to pay Lion $47 million in compensation, plus costs and attorney's fees. *Id.* ¶ 851 (J.A. 216).

## C.

On December 6, 2021, Mexico petitioned the United States District Court for the District of Columbia to vacate the award on the grounds that the Tribunal "exceeded [its] powers" under 9 U.S.C. § 10(a)(4) and acted in manifest disregard of the law. *United Mexican States*, 757 F. Supp. 3d at 27, 32. Specifically, Mexico argued that the Tribunal had impermissibly expanded the scope of Article 1105(1) by entering an award that protected foreign investors—not just investments—in Mexico. *Id.* at 29. Lion opposed the petition and submitted a cross-petition for confirmation of the award. *Id.* at 27.

The district court denied Mexico's petition and granted Lion's. *Id.* at 33. The court first corrected what it viewed as Mexico's fundamental misapprehension of the Tribunal's ruling: that the Tribunal had interpreted Article 1105(1) to generally protect foreign investors from unfair or inequitable treatment, even when the mistreatment was unconnected to any "investments" protected under NAFTA. *Id.* at 29. The district court explained that such a "sweeping" understanding of the Tribunal's decision could not be squared with the award's reasoning, including the Tribunal's dismissal of Lion's claims as to the promissory notes for failure to qualify as "investments" under NAFTA. *Id.* Thus, the district court explained, the Tribunal interpreted Article 1105(1) to protect foreign investors only from unfair treatment that adversely affects their qualifying investments.

The court then determined that the Tribunal did not exceed its powers in so concluding because the Tribunal's work fell

"comfortably within the realm of interpretation." *Id.* at 30. The court explained that the award reflected the Tribunal's interpretation because it "identified and rejected Mexico's argument, applied existing guidance interpreting Article 1105(1), cited cases, and explained its reasoning." *Id.* Next, assuming without deciding that arbitrators' "manifest disregard of the law" could provide an alternative, non-statutory basis for vacating an arbitral award, the court concluded that the Tribunal's award could not be so characterized for largely the same reasons the Tribunal did not exceed its powers in entering it. *Id.* at 28 n.8, 32. The court thus saw nothing warranting vacatur of the award. *Id.* at 32. Because a court "must grant" a timely filed petition to confirm an arbitral award "unless the award is vacated, modified, or corrected as prescribed in [S]ections 10 and 11 of [the FAA]," the district court granted Lion's timely cross-petition for confirmation. *Id.* at 32-33 (quoting 9 U.S.C. § 9).

Separately, while the petition and cross-petition remained pending in the district court but five months after the parties had finished their briefing, Cárdenas moved to intervene. *Id.* at 27. The arbitrators had found that Cárdenas orchestrated the fraudulent scheme in the Mexican courts that harmed Lion. Claiming that the award had violated his due process rights by "ma[king] serious findings of unlawful conduct against him during the arbitration without affording him an opportunity" to defend himself, Cárdenas sought to intervene in the district court in support of Mexico's petition to vacate the award. *United Mexican States v. Lion Mex. Consol. LP*, No. 21-3185 (D.D.C. July 21, 2023), ECF No. 42-1 (Mem. ISO Mot. to Intervene) at 13. He claimed his intervention would present an argument in support of vacatur that Mexico had not raised. *Id.* In the same order in which it denied Mexico's petition, the district court denied Cárdenas's motion to intervene: Cárdenas failed to establish that he is entitled to intervene as of right,

Fed. R. Civ. P. 24(a)(2), and provided no basis for permissive intervention, Fed. R. Civ. P. 24(b). *United Mexican States*, 757 F. Supp. 3d at 33-37.

Mexico and Cárdenas each timely appealed.

## II.

We begin with Mexico's petition to vacate the arbitral award. We review *de novo* the district court's application of the highly circumscribed grounds for vacatur. *Selden v. Airbnb, Inc.*, 4 F.4th 148, 155 (D.C. Cir. 2021).

## A.

Mexico first contends that the award should be vacated because the Tribunal "exceeded [its] powers." 9 U.S.C. § 10(a)(4). We are unpersuaded. As already noted, in reviewing a petition to vacate an arbitral award under Section 10(a)(4) of the FAA, "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract"— or, in this case, the treaty—"not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. If the arbitrator even arguably interpreted the terms of the agreement to arbitrate, the petition must be denied. *Id.* Here, Mexico challenges the Tribunal's conclusion that Article 1105(1) protects investors with regards to their qualifying investments. Thus, the question is whether the Tribunal arguably interpreted Article 1105(1) in so concluding. We conclude that it did.

Describing the Tribunal's analysis proves the point. In determining that Article 1105(1) covers investors as to their protected investments, the Tribunal started, as interpreters of law routinely do, with the text of that provision. *See* Award ¶ 356 (J.A. 110). The key Article states: "Each Party shall accord to investments of investors of another Party treatment

in accordance with international law . . . ." NAFTA art. 1105(1). The Tribunal noted that the "literal" terms of Article 1105(1) referenced the "treatment" of "investments of investors," Award ¶ 356 (J.A. 110), so it looked to authorities interpreting those terms.

First, the Tribunal relied on a Free Trade Commission Interpretation Note from July 31, 2001. In the Interpretation Note, the Commission understood Article 1105(1) as prescribing "the customary international law minimum standard of *treatment of aliens*" as the minimum standard of treatment to be afforded to investments of investors of another party. Award ¶¶ 356-58 (J.A. 110) (emphasis added) (internal quotation marks omitted). Because in the context of foreign-investor protection the Interpretation Note's reference to "aliens" could "only mean investors," *id.* ¶ 358 (J.A. 110), and because NAFTA makes the Commission's Interpretation Notes binding on arbitral tribunals adjudicating claims under that treaty, *see* NAFTA art. 1131(2), the Tribunal concluded that it was bound to interpret Article 1105(1) to protect investors, Award ¶ 358 (J.A. 110). The Tribunal then relied on several arbitration decisions that had "construed Art. 1105 as a source of protection for investors rather than solely for their investments." *Id.* ¶ 358 & n.384 (J.A. 110).

Starting with the text of Article 1105(1) and giving meaning to that text in accord with binding and persuasive authorities interpreting it, the Tribunal's analysis is, "through and through, [an] interpretation[] of the parties' agreement." *Oxford Health Plans*, 569 U.S. at 570. Contrary to Mexico's contentions, this is not a case in which the Tribunal lacked "*any* contractual basis" for its conclusion, such that the Tribunal "simply imposed its own conception of sound policy." *Id.* at 571 (internal quotation marks omitted); *cf. Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 189 (4th Cir. 2010)

(vacating arbitral award that either "disregarded or modified unambiguous contract provisions" or was based on arbitrators' "own personal notions of right and wrong"); *Mo. River Servs., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001) (vacating arbitral award that "rewrote" the contract (internal quotation marks omitted)).

Mexico levies two challenges to the contrary. It first contends that the district court "definitively" recognized that Article 1105(1) unambiguously excluded investors, yet its opinion and order impermissibly "ignored its previous finding." Mex. Br. 20, 22. As an initial matter, any such determination by the district court on the meaning of Article 1105(1)—a legal interpretation that Mexico inaccurately characterizes as a "finding"—would not bind us on *de novo* review. The district court, moreover, never concluded that Article 1105(1) unambiguously excluded investors. Mexico cites the district court's statement, made while questioning counsel at oral argument, that "a literal reading of 1105(1) clearly does not apply to investors." *See* Mex. Br. 20-21. But, as the district court ultimately concluded, the Tribunal's holding that Article 1105(1) protects investors still fell comfortably within the realm of interpretation. *United Mexican States*, 757 F. Supp. 3d at 29-31. Indeed, as the Tribunal's interpretation of Article 1105(1) illustrates, an observation about a "literal" reading is not the same thing as arriving at an "unambiguous" interpretation. Ultimately, whether Article 1105(1) is ambiguous (and whether the district court so concluded) is relevant only insofar as it bears on whether the Tribunal interpreted Article 1105(1) in rendering its award—which the Tribunal plainly did.

Mexico also argues that the district court erred by inaccurately "refram[ing]" the issue addressed by the Tribunal as one of "standing." *See* Mex. Br. 28-30. But the district

court did not so "reframe" the issue. When the court said that "[t]he Tribunal held only that investors had standing to bring claims *if* a challenged action affected a *qualified* investment," it was simply restating its observation that the Tribunal did not "rule that Article 1105(1) applied to investors writ large," but "only that an investor could bring a claim under Article 1105(1) *if* the challenged treatment affected a qualifying investment" by that investor. *United Mexican States*, 757 F. Supp. 3d at 29. What matters for judicial review is that the Tribunal arrived at that understanding by interpreting Article 1105(1). And, for reasons well explained by the district court, that is the best reading of how the Tribunal understood Article 1105(1). *See id*. at 29-31.

In sum, Mexico has failed to carry its "heavy burden" to show that the Tribunal exceeded its authority in concluding that Article 1105(1) protected Lion with regard to its investments. *Oxford Health Plans*, 569 U.S. at 569.

**B.**

As an alternative ground for vacatur, Mexico contends that the Tribunal acted in manifest disregard of the "governing law of treaty interpretation" as expressed in Article 31 of the Vienna Convention on the Law of Treaties. Mex. Br. 30 (formatting modified). We disagree.

It is "unclear . . . whether manifest disregard remains a valid ground for vacatur after the Supreme Court's decision in *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576, 584-86 (2008)," which held that "the FAA's list of grounds for refusing to enforce an award is exclusive." *Selden*, 4 F.4th at 160 n.6. The Supreme Court and this court have yet to decide whether non-statutory grounds for vacatur, including manifest disregard of the law, survived *Hall Street*. *Stolt-Nielsen S.A.*, 559 U.S. at 672 n.3; *Metro. Mun. of Lima v. Rutas De Lima*

*S.A.C.*, 141 F.4th 209, 219 (D.C. Cir. 2025). And we need not decide that question here. Even assuming, as the district court did, that manifest disregard of the law remains a separate ground for vacatur, the Tribunal did not act in manifest disregard of the law.

The party seeking to vacate an arbitral award bears the burden of demonstrating that the arbitrators acted in manifest disregard of the law. *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001). We have ruled that a tribunal acts in manifest disregard of the law if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether;" and (2) "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id*. (internal quotation marks omitted). Consistent with the deference owed to arbitrators' judgments and the finality interests that arbitration is designed to serve, we treat manifest disregard as an "extremely narrow" standard of review that is unmet "if any justification" for an award "can be gleaned from the record." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (internal quotation marks omitted).

Mexico fails to demonstrate that the Tribunal acted in manifest disregard of the law in interpreting Article 1105(1) to protect Lion with respect to its qualifying investments. Assuming that Article 31 of the Vienna Convention on the Law of Treaties constitutes a "governing legal principle" that is "well defined, explicit, and clearly applicable to the case," within the meaning of the manifest-disregard principle, Mexico has not shown that the Tribunal "refused to apply it or ignored it altogether." *LaPrade*, 246 F.3d at 706 (internal quotation marks omitted).

Article 31 of the Vienna Convention provides the "[g]eneral rule of interpretation" for construing treaties.

Vienna Convention on the Law of Treaties art. 31, May 23, 1969, 1155 U.N.T.S. 331 (Vienna Convention). It instructs that "[a] treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose." *Id*. Mexico places great emphasis on Article 31's reference to the "ordinary meaning" of the treaty, which it says "requires fealty to the text." Mex. Br. 32. And because the text of Article 1105(1) of NAFTA only refers to "investments of investors" and not "investors," Mexico contends that the Tribunal acted in manifest disregard of its obligation to interpret the treaty according to its "ordinary meaning." *Id.* at 34.

But Article 31 does not say that a treaty's interpretation must end with the text. Rather, it instructs that "ordinary meaning" is "to be given to the terms of the treaty in their context and in the light of its object and purpose." Vienna Convention art. 31. Mexico interprets Article 1105(1) of NAFTA to protect only "investments" and not "investors," such that it provides no protection to investors whose investments are mistreated. That interpretation, as the district court explained, would undermine "NAFTA's purpose of encouraging the free flow of goods, services, and investments among the signatories." *United Mexican States*, 757 F. Supp. 3d at 31 (citing NAFTA art. 102(1)).

Moreover, Article 31 also requires interpreters to "take[] into account" "any subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions." Vienna Convention art. 31. Here, as explained above, Article 1131(2) of NAFTA required the Tribunal to treat the Free Trade Commission's Interpretation Notes as binding. The Tribunal faithfully complied with Article 1131(2) of NAFTA—and thus, Article 31 of the Vienna Convention— when it considered the Free Trade Commission's Interpretation

Note on Article 1105(1). And that Interpretation Note supports the Tribunal's interpretation of Article 1105(1) to protect investors with regard to their qualifying investments. *See supra* at 10; *see also United Mexican States*, 757 F. Supp. 3d at 26-27. For these reasons, the Tribunal did not "refuse[] to apply" or "ignore . . . altogether" Article 31 of the Vienna Convention. *LaPrade*, 246 F.3d at 706 (internal quotation marks omitted). Accordingly, Mexico has not shown that the Tribunal acted in manifest disregard of the law.

Because Mexico failed to carry its burden to show that the Tribunal "exceeded [its] powers," 9 U.S.C. § 10(a)(4), or acted in manifest disregard of the law, *LaPrade*, 246 F.3d at 706, we affirm the district court's order denying Mexico's petition to vacate the arbitral award and granting Lion's cross-petition for confirmation.

## III.

We next address the district court's denial of Cárdenas's motion to intervene. Reviewing for abuse of discretion, *Campaign Leg. Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023), we affirm.

Cárdenas first argues that he was entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). "Parties have the right under Rule 24(a)(2) to intervene in an action if they meet four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). The district court denied intervention as of right for three reasons: First, Cárdenas's motion was not timely; second, Cárdenas's motion would have been futile; and third, Mexico

could adequately represent Cárdenas's interest. *United Mexican States*, 757 F. Supp. 3d at 33-36.

Because Mexico's ability to adequately represent Cárdenas's interest suffices to defeat intervention as of right, we need not consider the district court's other reasons. In his brief to us, Cárdenas says he is "not seeking to intervene in the *vacatur* proceeding to challenge the fraud findings or to try to reopen the other factual findings by the tribunal." Cárdenas Br. 31 (formatting modified). Instead, he seeks to intervene only "in support of Mexico's petition to vacate an arbitral award that directly harms his interests, by making additional arguments in support of vacatur that Mexico did not make." *Id*. Even assuming that Cárdenas has a cognizable interest in seeking vacatur of the award, Cárdenas does not contest that the interest he seeks to protect by intervening—to vacate the entire award rather than challenge specific findings about himself—is the same as Mexico's. Cárdenas Br. 42. Thus, as the district court explained, Cárdenas's motion "at best reflects a strategy disagreement with Mexico" about which arguments to raise in support of the shared goal of vacatur. *United Mexican States*, 757 F. Supp. 3d at 36. That kind of disagreement about litigation strategy does "not make inadequate the representation of those whose interests are identical with that of an existing party." *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1020 (D.C. Cir. 2004) (internal quotation marks omitted). Thus, Mexico could adequately represent Cárdenas's interest, which is an independently sufficient reason to deny intervention as of right. *See* Fed. R. Civ. P. 24(a)(2).

Cárdenas alternatively contends that the district court should have allowed him permissive intervention under Rule 24(b)(1). A court "may" allow intervention under Rule 24(b)(1) if the would-be intervenor presents "(1) an independent ground for subject matter jurisdiction; (2) a timely

motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Even when a movant meets those criteria, a court retains discretion to deny intervention. *Id.* The district court concluded that Cárdenas did not satisfy the criteria for permissive intervention because his motion was untimely, and that in any event his intervention would be "unlikely to significantly contribute to . . . the just and equitable adjudication of the legal question presented." *United Mexican States*, 757 F. Supp. 3d at 37 (internal quotation marks omitted).

The district court acted within its sound discretion in denying permissive intervention under Rule 24(b)(1). Even if Cárdenas had timely sought intervention, the district court, in exercising its discretion, would have had to consider whether the intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). And, as the court correctly explained, allowing Cárdenas to intervene would have "delay[ed] the proceeding . . . by requiring the parties to dedicate substantial time and resources briefing arguments" that both parties agreed were "unrelated to the existing petitions." *United Mexican States*, 757 F. Supp. 3d at 35. In these circumstances, the district court did not abuse the "wide latitude afforded to district courts" under Rule 24(b) when it denied Cárdenas's motion for permissive intervention. *National Children's Ctr.*, 146 F.3d at 1046.

We thus affirm the district court's denial of Cárdenas's motion to intervene.

18

\* \* \*

For the foregoing reasons, we affirm the district court's order.

*So ordered.*